No. 24-3097

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATE OF KANSAS, et al.,

*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Kansas
Case No. 5:24-cv-04041-JWB-ADM

## PLAINTIFFS-APPELLEES' RESPONSE IN OPPOSITION TO EMER-GENCY MOTION FOR A PARTIAL STAY

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

James A. Campbell
Jonathan A. Scruggs
Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org
*Counsel for Appellees K.R. and
Female Athletes United*

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS
Anthony J. Powell
Solicitor General
Abhishek S. Kambli
Deputy Attorney General
120 SW 10th Avenue
Topeka, KS 66612-1597
(785) 296-7109
Anthony.Powell@ag.ks.gov
Abhishek.Kambli@ag.ks.gov

*Counsel for Appellee State of
Kansas*

William E. Trachman
James L. Kerwin
MOUNTAIN STATES LEGAL FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
(303) 292-2021
wtrachman@mslegal.org
jkerwin@mslegal.org

Kimberly S. Hermann
Braden Boucek
Jordan Miller
SOUTHEASTERN LEGAL FOUNDATION
560 W. Crossville Rd.
Suite 104
Roswell, GA 30075
(770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org
jmiller@southeasternlegal.org

*Counsel for Appellees Moms for Liberty and Young America's Foundation*

TREG TAYLOR
ATTORNEY GENERAL OF ALASKA
Cori Mills
Deputy Attorney General
Alaska Department of Law
1031 W. 4th Ave, Suite 200
Anchorage, Alaska 99501-1994
(907) 465-4239
cori.mills@alaska.gov

*Counsel for Appellee State of Alaska*

SEAN REYES
ATTORNEY GENERAL OF UTAH
Lance F. Sorenson
Assistant Utah Attorney General
Utah Attorney General
160 E. 300 South, 5th Floor
Salt Lake City, UT 84114
(801) 366-0100
lancesorenson@agutah.gov

*Counsel for Appellee State of Utah*

BRIDGET HILL
ATTORNEY GENERAL OF WYOMING
Ryan Schelhaas
Chief Deputy Attorney General
Wyoming Attorney General Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Appellee State of Wyoming*

# TABLE OF CONTENTS

Table of Authorities.................................................................. iii

Introduction ............................................................................ 1

Background .............................................................................. 4

Argument ................................................................................. 8

I.  The Department is unlikely to succeed in proving that the
    current injunction is improper. ........................................ 9

    A.  Severance is not required at this preliminary stage. ............. 9

    B.  The Department has not shown the Rule is severable. ....... 10

        1.  The Department has not shown that the Rule can
            stand without the challenged provisions. .................... 11

        2.  The Department has not shown it would have the
            Rule without its challenged provisions. ..................... 13

    C.  Section 106.10 is unlawful and harmful. ............................ 14

    D.  The Department forfeited its severance argument. ............. 17

    E.  The associational Plaintiffs have standing, and the
        injunction need not be parsed to exclude any members. **Error!
        Bookmark not defined.**

II. The remaining factors favor preserving the status quo. ............... 18

    A.  The proposed stay would irreparably harm Plaintiffs. ........ 18

    B.  The balance of equities and public interest favor
        retaining the current injunction. ......................................... 20

Conclusion ............................................................................. 22

Certificate of Compliance .................................................... 24

Certificate of Digital Submission ............................................................ 25

Certificate of Service ................................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Adams ex rel. Kasper v. School Board of St. Johns County*,
    57 F.4th 791 (11th Cir. 2022).........................................15

*Alaska Airlines, Inc. v. Brock*,
    480 U.S. 678 (1987) ...................................................9, 10

*Aposhian v. Barr,*
    958 F.3d 969 (10th Cir. 2020) .......................................20

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*,
    562 F.3d 1067 (10th Cir. 2009) ......................................9

*Bostock v. Clayton County*,
    590 U.S. 644 (2020) .................................................4, 15

*Burke v. Regalado*,
    935 F.3d 960 (10th Cir. 2019) .......................................17

*Carroll Independent School District v. United States Department of Education*,
    __ F. Supp. 3d __, 2024 WL 3381901 (N.D. Tex. July 11, 2024) .......................................................................3

*Cohen v. Brown University*,
    101 F.3d 155 (1st Cir. 1996).........................................16

*Connecticut v. Massachusetts*,
    282 U.S. 660 (1931) ....................................................21

*Davis ex rel. LaShonda D. v. Monroe County Board of Education*,
    526 U.S. 629 (1999) ......................................................5

*DHS v. Regents of the University of California*,
    591 U.S. 1 (2020) ........................................................16

*Fowler v. Stitt*,
    104 F.4th 770 (10th Cir. 2024).......................................15

*Homans v. City of Albuquerque,*
    264 F.3d 1240 (10th Cir. 2001) ........................................9

*Hunt v. Washington State Apple Advertising Commission,*
    432 U.S. 333 (1977) ........................................18

*Jackson v. Birmingham Board of Education,*
    544 U.S. 167 (2005) ........................................15

*Louisiana v. United States Department of Education,*
    2024 WL 2978786 (W.D. La. June 13, 2024) ........................3

*Maryland v. King,*
    567 U.S. 1301 (2012) ........................................21

*National Association of Manufacturers v. Taylor,*
    549 F. Supp. 2d 68 (D.D.C. 2008) ........................................21

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................9

*Ohio State Conference of NAACP v. Husted,*
    769 F.3d 385 (6th Cir. 2014) ........................................20

*Ohio v. EPA,*
    144 S. Ct. 2040 (2024) ........................................13, 14

*Sackett v. EPA,*
    598 U.S. 651 (2023) ........................................17

*Schrier v. University of Colorado,*
    427 F.3d 1253 (10th Cir. 2005) ........................................21

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College,*
    600 U.S. 181 (2023) ........................................18

*Tennessee v. Cardona,*
    __ F. Supp. 3d __, 2024 WL 3019146 (E.D. Ky. June 17, 2024) ........................................3

*Texas v. Cardona,*
    __ F. Supp. 3d __, 2024 WL 2947022 (N.D. Tex. June 11,
    2024) ..................................................................................... 3

*United States v. Booker,*
    543 U.S. 220 (2005) ............................................................ 13

*United States v. Jackson,*
    390 U.S. 570 (1968) ...................................................... 10, 13

*University of Texas v. Camenisch,*
    451 U.S. 390 (1981) .............................................................. 9

*Valdez v. Macdonald,*
    66 F.4th 796 (10th Cir. 2023) .......................................... 17

*Wages & White Lion Investments, LLC v. FDA,*
    16 F.4th 1130 (5th Cir. 2021) .......................................... 18

*West Virginia v. EPA,*
    597 U.S. 697 (2022) ............................................................ 17

*Wisconsin Gas Co. v. FERC,*
    758 F.2d 669 (D.C. Cir. 1985) .......................................... 21

## Statutes

5 U.S.C. § 705 ............................................................................ 10

Alaska Stat. § 14.18.040 ............................................................ 6

Kan. Stat. Ann. § 60-5603 .......................................................... 6

Kan. Stat. Ann. § 72-6286 .......................................................... 6

Utah Code Ann. § 53G-6-902 .................................................... 6

Utah Code Ann. § 63G-31-301 .................................................. 6

Wyo. Stat. Ann. § 21-25-101 ...................................................... 6

Wyo. Stat. Ann. § 21-25-102 ...................................................... 6

## Regulations

Nondiscrimination on the Basis of Sex in Educ. Programs or
Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg.
33,474 (Apr. 29, 2024) .................................... 4–5, 12–13, 15–16, 19

# INTRODUCTION

Fifty years ago, Congress revolutionized education by enacting Title IX to help close the gap between women and men, promising equal opportunities for both. The law has been a success. But a different sort of revolution took place a few months ago. Department of Education officials published a new rule that reimagines sex discrimination to cover distinctions Congress never intended, adding concepts like gender identity and sometimes even prioritizing these concepts over sex. The result is Title IX's primary beneficiaries are denied their promised benefits.

This turns Title IX upside down, exchanging a well-established, biological, and binary concept of sex for a recent, subjective, and fluid concept of identity. This usurps Congress's role, enlarges agency power, and makes Title IX incoherent. For example, under the Department's new rule, women must share showers (but not dorm rooms) with some men; and women must share restrooms and overnight accommodations with some men (but not with men who identify as male or nonbinary). Neither is justified. Title IX ensures equality for all, not favors for some.

This change will harm many, including girls who must share locker rooms with males or seek an accommodation that the Department deems unfit for others. The new rule also violates the constitutional rights of educators and students who believe sex is immutable. The new rule forces

them to silence those views, speak inaccurate pronouns, and use restrooms with individuals of the opposite sex. At the same time, the new rule claims to preempt state laws that protect their rights.

Plaintiffs challenged the new rule. Plaintiffs include (1) four states—Kansas, Alaska, Utah, and Wyoming—(2) Moms for liberty, a group of parents advocating for their children, (3) Young America's Foundation, a group of college students seeking to exercise their free speech on campus, (4) Female Athletes United, a group of female athletes who want to ensure and advocate for women's sports and private spaces to remain for women, and (5) K.R., a 13-year-old girl who wants to keep her privacy rights and express her religious beliefs about biological sex when she goes to school. All will suffer if the new rule applies.

The court below preliminarily enjoined the rule. The Department moved to stay that order pending review, both in the district court and on appeal. Rather than move for a stay on the merits, the Department seeks to trim the injunction, believing it covers more than the challenged provisions. But courts need not perform a severability analysis before issuing an order preserving the status quo. Nor has the Department proved the new rule can be severed. Severance is both premature and presupposed. The Department has forfeited this argument anyway.

As for the equities, the Department seeks a staged rollout of the rule, beginning August 1. That would require schools to comply with and

train their teachers quickly and partially—creating confusion, headaches, and waste. It would be better and less burdensome to let schools update their policies and practices and re-train their staff just once, if at all, when this litigation ends. That's especially true when the Department has no answer for how certain provisions would apply without the challenged provisions that comprise the rule's foundation.

Five federal district courts have now considered and enjoined the Department's rewrite of Title IX, staying its effect. *Tennessee v. Cardona*, __ F. Supp. 3d __, 2024 WL 3019146 (E.D. Ky. June 17, 2024); *Louisiana v. U.S. Dep't of Educ.*, No. 3:24-CV-00563, 2024 WL 2978786 (W.D. La. June 13, 2024); *Texas v. Cardona*, __ F. Supp. 3d __, 2024 WL 2947022 (N.D. Tex. June 11, 2024); *Carroll Indep. Sch. Dist. v. U.S. Dep't of Educ.*, __ F. Supp. 3d __, 2024 WL 3381901 (N.D. Tex. July 11, 2024). The Department sought an injunction pending appeal in each case, raising the same severability arguments it raises here. The Sixth and Fifth Circuits have rejected the Department's position, both because it was forfeited below and lacks merit. *Tennessee v. Cardona*, No. 24-5588 (6th Cir. July 17, 2024), Doc. 41-1; *Louisiana v. U.S. Dep't of Educ.*, No. 24-30399 (5th Cir. July 17, 2024), Doc. 73-1. No circuits have gone the other way.

There is no need for this Court to depart from those circuits' well-reasoned decisions and create a conflict. Accordingly, this Court should retain the injunction below, deny the Department's request, and preserve the status quo that has existed without problem for half a century.

## BACKGROUND

*Title IX.* Congress passed Title IX to ensure equal opportunities for women by prohibiting discrimination in educational opportunities "on the basis of sex." App. in Supp. of Plaintiffs-Appellees' Resp. in Opp. to Emergency Mot. for Stay (App.) 49. The Act has had resounding success. For example, in 1970, only 66% of working women had high-school diplomas; in 2016, it was 94%. In 1972, only 7% of high-school varsity athletes were women; in 2018, it was 43%. App.227–28. And Title IX achieved that success by consistently defining its protection based on *sex*.

*The New Rule.* Now, the Department has reinterpreted Title IX, citing *Bostock v. Clayton County*, 590 U.S. 644 (2020), as cover. Nondiscrimination on the Basis of Sex in Educ. Programs or Activities Receiving Fed. Fin. Assistance, 89 Fed. Reg. 33,474 (Apr. 29, 2024) (the "Rule").

Start with the main change. The Rule redefines sex discrimination to include distinctions based on "gender identity," "sex stereotypes," and other conduct. 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.10). Such distinctions violate Title IX, the Rule says, because they "necessarily" require noticing "a person's sex," even if "sex" means the "physiological or 'biological distinctions between male and female,' as the Supreme Court assumed in *Bostock*." *Id.* at 33,802. Read with other Rule provisions, this change imposes multiple new mandates.

For example, the Rule allows some sex distinctions and forbids others based on whether they cause "more than de minimis harm." *Id.* at

33,887 (to be codified at 34 C.F.R. § 106.31(a)(2)). Unless expressly exempted, any policy or "practice that prevents a person from participating in" a covered "activity consistent with [their] gender identity" causes more than de minimis harm. *Id.* at 33,820. So § 106.10 and § 106.31(a)(2) work to forbid sex distinctions that deny a student access to sex-specific activities "consistent with [their] gender identity." *Id.* at 33,818.

The Rule also imposes a "broader standard" for hostile-environment claims. 89 Fed. Reg. at 33,498. Harassment now need only be severe *or* pervasive. App.81. Complainants need not "demonstrate any particular harm," or show that the conduct denied them access to the educational program. 89 Fed. Reg. at 33,511. Harassment can be anything the student considers "unwelcome" or that "limits" the student's ability to benefit from an educational program. *Id.* at 33,884 (to be codified at 34 C.F.R. § 106.2). The Department accepts this standard is "broader" than the Supreme Court's interpretation of Title IX in *Davis ex rel. LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999). 89 Fed. Reg. at 33,498. So § 106.10 and § 106.2 also impose a new mandate, forcing students and staff to avoid saying sex is binary and to use incorrect pronouns, among other things. This violates the First Amendment.

These are just two examples. The Rule's new definition of sex discrimination affects how *many* provisions will apply.

*Plaintiffs*. Plaintiff States run educational programs that Title IX covers. App.201–06. And they receive over a billion dollars of federal

funding in return. App.156–57. To further protect students, these states have also enacted their own laws to ensure student privacy and equal participation in educational activities. For example, Kansas requires schools to designate sex-specific sports, Kan. Stat. Ann. § 60-5603, and "overnight accommodations … during school district sponsored travel that requires overnight stays by students," Kan. Stat. Ann. § 72-6286(a). Alaska, Utah, and Wyoming have likewise enacted laws ensuring sex-specific sports, restrooms, and locker rooms. *E.g.* Alaska Stat. § 14.18.040; Utah Code Ann. §§ 53G-6-902, 63G-31-301(1); Wyo. Stat. Ann. §§ 21-25-102, 21-25-101(a)(iv).

K.R. is a 13-year-old girl who lives in Stillwater, Oklahoma, and attends Stillwater Middle School. App.208. Last year, K.R. encountered males who identify as females in a girls' restroom at Stillwater Middle. *Id.* This made her feel uncomfortable, embarrassed, and unsafe. App.208–09. She is not comfortable sharing a private space with males. *Id.* And the restrooms at Stillwater Middle provide minimal privacy: the stalls have large cracks between the door and wall panels, making it easy for someone to see into the stall. App.209. After this, K.R. stopped using the restroom at school, which often required her to avoid using the restroom for nine hours at a time before Oklahoma passed a law ensuring sex-specific restrooms. App.209–10.

K.R. is also a Christian who believes God created humans male or female, and that humans cannot change their God-given sex. App.211.

Her faith also teaches that she should not lie. *Id.* She believes that referring to a male as "she," "her," or any other inaccurate pronoun—or vice-versa for a female—is a lie and would violate her faith. *Id.* She knows students at her school who identify as the opposite sex and who want others to refer to them with inaccurate pronouns. *Id.* K.R. cannot do this consistent with her faith. *Id.* K.R. sometimes discusses her religious beliefs with her friends at school. App.211–12. These discussions include her belief that there are only two sexes, and that people cannot change their sex. *Id.* They also include her discomfort about using the restroom with members of the opposite sex. *Id.*

Three groups are also plaintiffs. Female Athletes United is a membership group formed to defend equal educational opportunities for women and girls. App.215. Its members advocate for women's sports and oppose sharing intimate spaces like restrooms, locker rooms, and overnight accommodations with males. App.219–22. Moms for Liberty includes over 130,000 members. It aims to unify, educate, and empower parents to defend their rights, including by protecting their children from harmful ideologies taught in school programs. Young America's Foundation includes thousands of members on college campuses. It promotes free speech and empowers members to educate campus communities through flyers, tabling, debates, and more. Each group fears the new Rule will harm its members and impede its advocacy.

*Procedures*. Plaintiffs challenged the Rule, claiming it violates the APA because it is inconsistent with law, beyond statutory authority, contrary to the Constitution, and arbitrary and capricious. App.108–28. They alleged the Rule redefines sex discrimination and other key terms to forbid conduct that Title IX never meant to cover and to require conduct that Title IX forbids. *Id.* Plaintiffs also moved to stay and preliminarily enjoin the Rule. The district court granted that motion, prohibiting the Department from "implementing, enacting, [or] enforcing" the Rule while promising to ratify this by "separate order." App.47.

The Department appealed. It also moved the district court for a stay of its order insofar as the order goes beyond 34 C.F.R. § 106.31(a)(2) and 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination based on gender identity. The parties have briefed this matter below, but no ruling has issued. So the Department moved this Court for an emergency stay on appeal. Emergency Mot. for a Partial Stay Pending Appeal (Mot.). Like the Fifth and Sixth Circuits, this Court should retain the injunction below and preserve the status quo.

## ARGUMENT

To determine whether to grant a stay pending appeal, this Court considers (1) the likelihood of success on appeal; (2) whether the applicant will suffer irreparable injury; (3) the hardship a stay inflicts on other parties; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434

(2009). Here, the Department must prove "a clear and unequivocal right" to the requested stay. *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001) (per curiam). It has not carried that heavy burden.

## I.   The Department is unlikely to succeed in proving that the current injunction is improper.

The Department says the injunction below is "overbroad" because Plaintiffs do not challenge every provision and possible application of the Rule. Mot. 10–20. It says most revisions "have nothing to do with gender identity," so the Rule can be severed. *Id.* at 11. But courts need not do a roving severability analysis before preserving the status quo. Nor has the Department shown the Rule is severable—misapplying *Bostock* and showing only a few applications out of hundreds to make its case. Regardless, the Department forfeited this argument below.

### A.   Severance is not required at this preliminary stage.

The Department says the district court should have severed the rule. Mot. 10. But preliminary injunctions keep the status quo until "a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Severability, by contrast, considers whether "what is left" at final judgment "is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). Courts have "broad discretion" to preserve the status quo pending review, even if the final outcome may give narrower relief or no relief at all. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

The district court acted well within its discretion in granting the preliminary injunction. Its relief stays a partial rollout that would confuse and impose expensive compliance costs on covered individuals. This relief also respects the APA, which directs courts to delay "the effective date" of agency action when required to stop irreparable harm and "to preserve" the status quo pending review. 5 U.S.C. § 705. Because the Rule has but one effective date and is but one agency action, its provisions rise or fall together at this preliminary stage. No matter whether the Rule would be severable at final judgment, the court rightly preserved the status quo for now. *See* Order, *Cardona*, *supra* (affirming identical relief).

### B. The Department has not shown the Rule is severable.

The Department also has not shown the Rule is severable. While a severability clause is informative, "the ultimate determination of severability will rarely turn on" such a clause. *United States v. Jackson*, 390 U.S. 570, 585 n.27 (1968). Rather, the Department must prove the unchallenged provisions will still operate as the agency intended. *Alaska Airlines*, 480 U.S. at 685. A coherent balance of remaining provisions is necessary but not sufficient, and the Rule must "function in a *manner* consistent with" the agency's intent. *Id.* at 684–85. Even then, the Department must show it would have enacted the balance without the unlawful provisions. *Id.* The Department has not shown that here.

### 1. The Department has not shown that the Rule can stand without the challenged provisions.

The challenged provisions are so central to the Rule that it cannot meaningfully operate without them. They redefine "sex discrimination" in 34 C.F.R. § 106.10, impose a de-minimis-harm standard in 34 C.F.R. § 106.31(a)(2), and redefine hostile-environment harassment in 34 C.F.R. § 106.2 as to gender identity. These provisions—especially the redefinition of "sex discrimination"— inform and pervade the entire Rule. As the Sixth Circuit explained, "these provisions … appear to touch every substantive provision of the Rule." Order 6, *Cardona*, *supra*. Because these provisions comprise the Rule's foundation, the Rule cannot function coherently without them. Nor can it function as the agency intended.

Consider how new changes affect 34 C.F.R. § 106.8, a provision the Department claims is severable. Mot. 11. This provision requires Title IX coordinators to "ensure the recipient's consistent compliance with its responsibilities under Title IX and this part." But without the challenged provisions, the coordinators' responsibilities are unclear. Indeed, if the Department had its way and newly redefined § 106.10 took effect, Title IX coordinators would not know whether it is gender identity, sex, or something else that controls when considering sex-based distinctions.

This provision also requires schools to record "each notification the Title IX Coordinator receives of information about conduct that reasona-

bly may constitute sex discrimination." 89 Fed. Reg. at 33,886 (to be codified at 34 C.F.R. § 106.8(f)(2)). But whether "conduct reasonably may constitute sex discrimination" turns on the meaning of "sex discrimination," which in turn depends both on the Rule's new definition and on whether the de-minimis-harm provision applies. A school cannot keep compliant records—much less investigate anything that "*may* constitute sex discrimination"—without knowing what that term means.

The Department's other examples are also intertwined. Take the "recipient's response" duty for sex-discrimination claims, 89 Fed. Reg. at 33,888–91 (to be codified at 34 C.F.R. § 106.44), the new "grievance procedures," 89 Fed. Reg. at 33,891–95 (to be codified at 34 C.F.R. §§ 106.45–106.46), and the new "prohibit[ions on] retaliation," 89 Fed. Reg. at 33,896 (to be codified at 34 C.F.R. §§ 106.2, 106.71). Mot. 11. Schools cannot implement these provisions without knowing the *meaning* of sex discrimination and what defines harassment. They're in the dark.

Similarly, the new regulations on lactation spaces require "actions … to promptly and effectively prevent sex discrimination and ensure equal access." 89 Fed. Reg. at 33,887 (to be codified at 34 C.F.R. § 106.40(b)(3)(v)). Without the de-minimis-harm provision—which the Department does not seek to release from the injunction below—the result is unclear. For example, if § 106.10 became effective, schools would not know whether they must allow males to access private spaces designated for nursing women just as they must allow males access to women's

restrooms, showers, and locker rooms. Because no one knows how the new "gender identity" and "sex stereotypes" provisions work with existing law, women may suffer harm just to avoid accusations of discrimination.

Furthermore, the Rule is also procedurally deficient. The district court correctly noted that that "Plaintiffs will likely prevail on their claim that DoE's rulemaking was arbitrary and capricious." App.40. This was because the court concluded that (1) The Department's explanation for the Rule was implausible, (2) that it was a sharp departure from past practice without reasonable explanation, and (3) the Department failed to adequately consider several relevant factors when drafting the Rule. App.33-38. These procedural defects in the rulemaking process also make it impossible to sever the Rule.

### 2. The Department has not shown it would have the Rule without its challenged provisions.

The Department also has not shown it would have enacted the Rule without its unlawful provisions. While a severability clause is informative, it is not dispositive. *Jackson*, 390 U.S. at 585 n.27. And such a clause cannot save a rule when the remaining provisions are otherwise unjustified. *Ohio v. EPA*, 144 S. Ct. 2040, 2054–55 (2024).

This Court should not assume the Department "would have preferred to apply the [Rule] in as many" situations "as possible" if "key" provisions were invalid. *United States v. Booker*, 543 U.S. 220, 248

(2005). The Rule is "highly complex," containing many "interrelated provisions." *Id.* It's one unified policy aiming to ensure equal educational opportunities, *see* 89 Fed. Reg. at 33,476. And the Department has said its provision redefining sex discrimination is "essential" to this goal. *Id.* at 33,500. The Department would not have been content without them.

In fact, the Department justified the Rule and its high costs based on benefits it expects *from implementing the challenged provisions*. 89 Fed. Reg. at 33,861–62. Without those benefits, the Department cannot justify the costs. And the Department relied on *extensive* estimates of costs that the Rule would impose on schools. 89 Fed. Reg. at 33,860–81. A partial rollout would duplicate many of those costs in ways the Department never considered. *Cf. Ohio*, 144 S. Ct. at 2054–55 (staying a rule that imposed different burdens than the agency estimated).

In sum, the challenged provisions are key, and the Rule's other provisions cannot work without them. The Rule is inseverable.

## C. Section 106.10 is unlawful and harmful.

The Department says § 106.10's redefinition of sex discrimination should take effect because *Bostock* requires the change, and it does not injure Plaintiffs. Wrong on both counts.

Start with the harm. That provision is the core flaw in the Rule because it sweepingly applies *Bostock* throughout Title IX even though, as the court below held, that "is not appropriate and would contradict the

purpose of Title IX." App.23. Though the Department says this provision ensures equal access to science fairs and student government based on sexual orientation and gender identity, that misses the point. By infusing Title IX with *Bostock*'s logic, the Rule vitiates sex distinctions in situations where sex does matter—like showers and locker rooms.

The Department rejects this, but it has argued for years that incorporating *Bostock* into Title IX does just that. App.259–90. If the Department had its way, the new § 106.10 would apply and stifle the injunction. *Bostock* does not justify the change anyway. First, *Bostock* did not change the meaning of "sex" in Title VII or Title IX; it accepted that "sex" means biologically male or female. Nor do the new rules purport to equate gender identity and sex. *E.g.*, 89 Fed. Reg. at 33,807. That is fatal because *Bostock* said gender-identity discrimination is a *form* of sex discrimination; it did not say *all* sex distinctions are a form of gender-identity discrimination. If that were true, Title IX would be at war with itself because it authorizes sex-specific facilities and sports teams.

Second, *Bostock* dealt with hiring and firing in employment while Title IX deals with educational opportunities. "[T]he school is not the workplace." *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 808 (11th Cir. 2022). "Title VII … is a vastly different statute from Title IX." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005). *Bostock* didn't "purport to address bathrooms, locker rooms, or anything else of the kind." 590 U.S. at 681. As other courts have held, *Bostock*'s

logic does not change Title IX. *E.g.*, Order 4–5, *Cardona, supra*. Nor does *Fowler v. Stitt* suggest otherwise. 104 F.4th 770 (10th Cir. 2024). No matter whether *Bostock*'s logic extends beyond Title VII, *Fowler* never said it controls Title IX—which includes distinct text and exemptions this Court never addressed. App.19–20 (district court distinguishing *Fowler*).

Third, *Bostock* held that "sex is not relevant to the selection, evaluation, or compensation of employees" under Title VII, which treats sex like race, national, origin, and other protected classifications. 590 U.S. at 660 (cleaned up). But Title IX *only* covers sex, which often *is* relevant to promoting educational opportunities. Take sports. Under *Bostock*, employers cannot consider sex when hiring or firing. Applied to sports, that logic would mean schools cannot consider sex when creating sports teams. But "athletics programs *necessarily* allocate opportunities separately for male and female students." *Cohen v. Brown Univ.*, 101 F.3d 155, 177 (1st Cir. 1996). Title IX often requires schools to consider sex to protect equal opportunities, particularly for female athletes.

Fifth, *Bostock*'s logic contradicts the Rule's new distinctions. For example, the Rule in theory allows boys' and girls' restrooms, just assigned by gender identity instead of sex. 89 Fed. Reg. at 33,818. But per the Rule, facilities designated by gender identity still discriminate based on sex: "it is impossible to discriminate against a person because of their … gender identity without discriminating against that individual based

on sex." *Id.* at 33,816 (cleaned up). According to the Department's logic, the Rule draws distinctions forbidden by Title IX's general prohibition.

The Department's logic works only if the rule allowing sex-specific spaces redefines "sex" to mean "gender identity." *E.g.*, 34 C.F.R. § 106.33. But the Department has disclaimed that argument, *e.g.*, 89 Fed. Reg. at 33,807, barring the agency from raising it now, *see DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20 (2020). Thus, while the *statute* forbids schools from considering sex per the Department's take on *Bostock*, the Rule sometimes overrides the statute, discards *Bostock*, and allows these forbidden distinctions. In other words, "sex" means "sex," except when it means gender identity. Nothing supports this illogic.

The Rule's redefinition of sex discrimination is not a "straightforward application of *Bostock*." Mot. 16. It is a "highly consequential" and "transformative" change to our nation's educational system. *West Virginia v. EPA*, 597 U.S. 697, 724 (2022). The Department seeks to crucially disrupt "the balance between federal and state power" in an area traditionally regulated by the states. *Sackett v. EPA*, 598 U.S. 651, 679 (2023). And it does so with no "clear statement" from Congress. App.28.

### D. The Department forfeited its severance argument.

Critically, the Department forfeited its severance argument below, making just two passing references in briefing. App.225. But this meager mention does not preserve the argument. "'Cursory statements, without

supporting analysis and case law' are inadequate to preserve an issue." *Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019) (citation omitted). This Court does "not address arguments raised in the district court in a perfunctory and underdeveloped manner." *Valdez v. Macdonald*, 66 F.4th 796, 817 (10th Cir. 2023) (citation omitted). The Department has failed to develop a workable alternative that accounts for the rule's harm yet allows it to partially apply. Instead, the Department asked the Court to come up with a workable alternative for them. So, it has forfeited this point. Order 4, *Louisiana*, *supra*.

## II. The remaining factors favor preserving the status quo.

The remaining factors favor Plaintiffs. App.38–39. A partial rollout would unnecessarily impose heavy compliance costs and confuse educators and students. Nothing justifies changing the status quo.

### A. The proposed stay would irreparably harm Plaintiffs.

*Costs*. Unrecoverable compliance costs—like costs to update policies and train educators and students—impose irreparable harm. *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021). The Rule accepts that changes related to the maintenance of "records related to sexual harassment"—to which the new definition of "sex" is critical— will cost some recipients "approximately $13,022,034 in Year 1." 89 Fed. Reg. at 33,873. Other compliance costs include modifying spaces and hir-

ing additional Title IX coordinators. App.201–06. The Department's request for a *partial* stay only *worsens* this irreparable harm. Schools would have to comply not just once, but *at least* twice. That wastes resources.

Title IX has been read one way for over fifty years. Now, the Department would have schools amend their policies and procedures, modify their spaces, and train their employees on some parts of the Rule, all within a matter of days. Schools must do this with no idea how to interpret sex discrimination in 34 C.F.R. § 106.10 consistent with Title IX's many permissible sex distinctions. And they must apply the Rule's "broader" harassment provision, but not if the complainant alleges gender-identity harassment, in which case the prior regulations presumably remain in place. That piecemeal approach is troubling enough.

But then, the Department would have every school do this all over again when the case ends. It believes the whole Rule is lawful. Mot. 2. But its motion does not defend key provisions. The Department would require training—and re-training—to partially enforce the Rule, which would force schools to potentially suffer twice the compliance costs. This is inconsistent with the Department's own cost estimate, 89 Fed. Reg. at 33860–81, and irreparably injures those affected by the rule.

*Confusion*. The injunction below rightly delays the compliance date for the new rule entirely. It allows schools to avoid wholesale changes to their policies and practices until the end of this case, sparing teachers

and students the confusion and headache of trying to learn and comply with shifting requirements. For example, the Department never explains how schools can comply with § 106.10 if it goes into effect but § 106.31(a)(2) does not. How can schools prevent discrimination based on gender identity under § 106.10 *and* prevent discrimination based on sex in circumstances where they cannot do both? No one knows.

Forcing teachers to enforce such contradictory requirements will mire them in regulatory mud and impede their ability to engage their students. The best approach is to allow the injunction to remain in place until the appeal is decided. *Cf. Ohio State Conf. of NAACP v. Husted*, 769 F.3d 385, 389 (6th Cir. 2014) (refusing to stay preliminary injunction when it would create "confusion" among affected individuals). The Sixth and Fifth Circuits and the court below got it right.

## B.    The balance of equities and public interest favor retaining the current injunction.

In contrast, the Department has not shown it would suffer *any* harm if the current injunction is kept. And because the public interest merges with the Department's, a stay is not in the public interest either. *See Aposhian v. Barr,* 958 F.3d 969, 978 (10th Cir. 2020).

The Department says any time the "government 'is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" Mot. 20 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But it

omits key text from its source, which limits this injury to states. *See King*, 567 U.S. at 1303. The Department isn't a State. Nor is it effectuating a duly enacted statute. It is an agency trying to rewrite a statute contrary to law. There is no sovereign harm if the Rule is enjoined.

The Department also says the injunction "could impair" the rights of others. Mot. 20, with imagined situations like new mothers being denied access to lactation rooms and having to utilize a bathroom stall to express breastmilk. But the Department provides no evidence that any of this has occurred or will occur in the future. Such speculation cannot show irreparable harm that warrants a stay. *See Nat'l Ass'n of Mfrs. v. Taylor*, 549 F. Supp. 2d 68, 75 (D.D.C. 2008).

To obtain a stay, the alleged injury "must be both certain and great; it must be actual and not theoretical. Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time.'" *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam) (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)). The Department must show that the alleged injury is so imminent that "there is a clear and present need for equitable relief to prevent irreparable harm." *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1267 (10th Cir. 2005) (citation omitted). The Department's speculation does not justify the stay it seeks.

# CONCLUSION

The district court properly ordered preliminary relief to preserve the status quo just like every other district court around the country that has considered the new Title IX rule. The Sixth and Fifth Circuits have already rejected the Department's identical arguments in support of requests for emergency stays pending appeal in similar cases. This Court should do the same and retain the injunction below.

Dated: July 22, 2024

Respectfully submitted,

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

James A. Campbell
Jonathan A. Scruggs
Jacob P. Warner
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jcampbell@ADFlegal.org
jscruggs@ADFlegal.org
jwarner@ADFlegal.org

*Counsel for Appellees K.R. and Female Athletes United*

*s/Anthony J. Powell*
KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS
Anthony J. Powell
Solicitor General
Abhishek S. Kambli
Deputy Attorney General

120 SW 10th Avenue
Topeka, KS 66612-1597
(785) 296-7109
Anthony.Powell@ag.ks.gov
abhishek.kambli@ag.ks.gov

*Counsel for Appellee State of Kansas*

TREG TAYLOR
ATTORNEY GENERAL OF ALASKA
Cori Mills
Deputy Attorney General
Alaska Department of Law

William E. Trachman
James L. Kerwin
MOUNTAIN STATES LEGAL
FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
(303) 292-2021
wtrachman@mslegal.org
jkerwin@mslegal.org

Kimberly S. Hermann
Braden Boucek
Jordan Miller
SOUTHEASTERN LEGAL
FOUNDATION
560 W. Crossville Rd.
Suite 104
Roswell, GA 30075
(770) 977-2131
khermann@southeasternlegal.org
bboucek@southeasternlegal.org
jmiller@southeasternlegal.org

*Counsel for Appellees Moms for
Liberty and Young America's
Foundation*

1031 W. 4th Ave, Suite 200
Anchorage, Alaska 99501-1994
(907) 465-4239
cori.mills@alaska.gov

*Counsel for Appellee State of
Alaska*

SEAN REYES
ATTORNEY GENERAL OF UTAH
Lance F. Sorenson
Assistant Utah Attorney General
Utah Attorney General
160 E. 300 South, 5th Floor
Salt Lake City, UT 84114
(801) 366-0100
lancesorenson@agutah.gov

*Counsel for Appellee State of
Utah*

BRIDGET HILL
ATTORNEY GENERAL OF WYOMING
Ryan Schelhaas
Chief Deputy Attorney General
Wyoming Attorney General Office
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Appellee State of
Wyoming*

# CERTIFICATE OF COMPLIANCE

This response complies with the word limit of Fed. R. App. P. 27(d)(2)(A) and C.R. 27.3 because it contains 5136 words, excluding parts exempted by Fed. R. App. P. 32(f).

This response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: July 22, 2024

*s/Anthony J. Powell*
Anthony J. Powell
*Counsel for Appellees*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

(1) all required privacy redactions have been made per 10th Cir. R. 25.5;

(2) if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Cortex XDR, Agent version 7.8.1, and according to the program are free of viruses.

*s/Anthony J. Powell*
Anthony J. Powell
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2024 I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*s/Anthony J. Powell*
Anthony J. Powell
*Counsel for Appellees*