Case No. 24-3097

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATE OF KANSAS, *et alia*,
Plaintiffs - Appellees,

vs.

UNITED STATES DEPARTMENT OF EDUCATION, *et alia*,
Defendants - Appellants.

Appeal from the U.S. District Court for the District of Kansas
Honorable John W. Broomes, United States District Judge
Case No. 5:24-cv-04041-JWB-ADM

# BRIEF OF *AMICUS CURIAE* BRENT ELLIS,
# PRESIDENT OF SPRING ARBOR UNIVERSITY,
# IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMING

Jonathan Sternberg, Kan. #25902
   *Counsel of Record*
*Jonathan Sternberg, Attorney, P.C.*
2323 Grand Boulevard #1100
Kansas City, Missouri 64108
(816) 292-7020
jonathan@sternberg-law.com

WILLIAM WAGNER
GREAT LAKES JUSTICE CENTER
5600 West Mount Hope Hwy
Lansing, MI 48917
(517) 643-1765
Prof.WWJD@gmail.com

COUNSEL FOR *AMICUS CURIAE*

## Disclosure Statement

Per Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A), undersigned counsel certifies that the *amicus curiae* is not a nongovernmental entity with a parent corporation or a publicly held corporation that owns 10% or more of its stock.

# Table of Contents

Disclosure Statement ................................................................................. i

Table of Authorities ................................................................................. iii

Interest of *Amicus Curiae* ........................................................................ 1

Summary of Argument ............................................................................. 3

Argument .................................................................................................. 5

   I. This Court should uphold the injunction the district court
      entered and restore predictability in the law that the current
      jurisprudential conflict diminishes. ................................................. 5

Conclusion .............................................................................................. 12

Certificate of Compliance ....................................................................... 13

Certificate of Service .............................................................................. 14

# Table of Authorities

**Cases**

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) ................................................................. 9

*United States v. Virginia*, 518 U.S. 515 (1996) ....................................... 9

**United States Code**

28 U.S.C. § 1681 ................................................................. 6

**Federal Rules of Appellate Procedure**

Rule 26.1 ................................................................. i

Rule 29 ................................................................. i, 1, 13

Rule 32 ................................................................. 13

**Other authorities**

Doriane Lambelet Coleman, *Sex in Sport*, 80 LAW & CONTEMP. PROBS. 63 (2017) ................................................................. 8-9

Hillary Cass, M.D., *Independent review of gender identity services for children and young people* (2024), https://cass.independent-review.uk/wp-content/uploads/2024/04/CassReview_Final.pdf (last viewed Oct. 15, 2024) ................................................................. 10

NAIA Transgender Participation Policy (April 8, 2024), https://www.naia.org/transgender/files/TG_Policy_for_webpage_v2.pdf (last visited Oct. 15, 2024) ................................................................. 4, 8-9, 11

NAIA Transgender Task Force, https://www.naia.org/transgender/index (last visited Oct. 15, 2024) ................................................................. 1, 7-8

Valerie Richardson, "New Hampshire becomes 25th state to ban biological males from female sports with bill-signing," *Higher Ground Times* (July 22, 2024), https://highergroundtimes.com/higher-ground/2024/jul/22/chris-sununu-signs-new-hampshire-bans-on-biologica/ (last visited Oct. 15, 2024) ................................................................................5

Women's Sports Policy Working Group, *578+ Male\* Victories in Female Sports*, https://womenssportspolicy.org/253-male-victories-in-female-sports/ (last visited Oct. 15, 2024)........................ 10

# Interest of *Amicus Curiae*[1]

Under Fed. R. App. P. 29(a)(4), *Amicus Curiae* Brent Ellis, President of Spring Arbor University, submits this brief.

Dr. Brent Ellis serves as the 30th president of Spring Arbor University ("SAU"). At SAU, women compete in these female sports programs: Basketball, Bowling, Cross Country, Golf, Soccer, Softball, Tennis, Track & Field, and Volleyball. SAU men compete in these male sports programs: Baseball, Basketball, Bowling, Cross Country, Golf, Soccer, Softball, Tennis, and Track & Field. Coed sports include Competitive Cheer and Esports.

SAU is a member of the National Association of Intercollegiate Athletics ("the Association"), the second largest governing body in American collegiate sports. The Association includes 237 institutions in 21 conferences. President Ellis serves on the NAIA Council of Presidents. At the request of the Council, the NAIA formed a task force to review its existing policies governing sports participation, which resulted in a new NAIA policy. *See* NAIA Transgender Task Force, https://www.naia.org/transgender/index (last visited Oct. 15, 2024). President Ellis actively participated in this two-year process.

---

[1] All parties have consented to *Amicus Curiae* filing this brief. No party's counsel authored this brief in whole or in part, and no counsel – other than *Amicus Curiae* and his counsel – contributed money that was intended to fund preparing or submitting this brief.

President Ellis holds a significant interest in the education of the next generation. He has special knowledge helpful to this Court in this case about male athletes competing against female athletes in female sports. He presents this special knowledge in this Brandeis-style *Amicus Curiae* brief.

## Summary of the Argument

This Court should uphold the injunction that the district court entered in this case to restore predictability in the law.

Some athletes claim legal protection for new classifications flowing from fluid gender identity formulations, rather than from objective biological science, which shows that sex is immutable. When this contemporary cultural clash challenged the advancement of fairness for women in sports, the NAIA sought a just resolution. An NAIA task force conducted a two-year study under the direction of the Council of Presidents, including *Amicus Curiae* Dr. Brent Ellis, President of Spring Arbor University.

In this Brandeis-style *Amicus Curiae* brief, President Ellis presents the conclusions the NAIA task force reached to assist this Court in understanding the jurisprudential differences underlying the parties' positions in our divided culture. The NAIA's study demonstrated the relevance of biological sex to "supporting the fair and safe competition opportunities for all student athletes." The task force study found each NAIA male and female sport "includes some combination of strength, speed, and stamina, providing competitive advantages for male student athletes." As to whether NAIA policy should permit men to compete against women in female sports, each of these elements rationally relate to – and are necessary for – creating a fair playing field, ensuring safety for competing athletes, and

precluding male athletes from unfairly taking scholarship positions of female athletes.

After unanimous approval by the Council of Presidents, the NAIA "created separate categories for male and female participants." NAIA Transgender Participation Policy (April 8, 2024), https://www.naia.org/transgender/files/TG_Policy_for_webpage_v2.pdf (last visited Oct. 15, 2024).

## Argument

**I. This Court should uphold the injunction the district court entered and restore predictability in the law that the current jurisprudential conflict diminishes.**

Deeply divided on many issues, the States now divide in half as to whether male athletes ought to be allowed to compete in female sports against female athletes. Valerie Richardson, "New Hampshire becomes 25th state to ban biological males from female sports with bill-signing," *Higher Ground Times* (July 22, 2024), https://highergroundtimes.com/higher-ground/2024/jul/22/chris-sununu-signs-new-hampshire-bans-on-biologica/ (last visited Oct. 15, 2024).

Reflecting this deep division, federal courts continue to split over how to decide these issues. This case provides this Court an opportunity to restore predictability in the law by upholding the injunction the district court entered. Predictability in the law is necessary for good governance under the rule of law, especially during times of jurisprudential conflict and cultural discord.

Consistency in judicial decisions, grounded in honest interpretation, give government officials and others notice of what is prohibited. Particularly for judicial review of government action and statutory constitutional provisions, consistency in decisions provides predictability for officials seeking to act in accordance with statutory and constitutional standards. Conversely, inconsistent judicial

precedents lead to unpredictability in the law, lacking beneficial guidance for government officials or others trying to act within the law. *Amicus Curiae* President Ellis is among those seeking to act within the law amid a nation divided.

In Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, Congress statutorily removed obstacles precluding women, based on their sex, from participating in educational opportunities, greatly advancing fairness in opportunities for women in sports. Title IX provides in relevant part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance …." *Id.* at §1681(a).

What does "sex" mean for the purpose of Title IX? Challenges to the advancement of fairness for women in sports occurs when male athletes subjectively self-identify as female. Because these men claim legal protection flowing from fluid gender identity formulations, their claims collide with objective biological science showing that sex is immutable.

Does a policy enabling male athletes to identify as female create an unfair playing field? Does it endanger competing female athletes? Does it unfairly displace scholarships intended for female athletes?

Responding to these concerns, university athletic programs, conferences, and associations sought solutions. One of these athletic associations was the NAIA.

The second largest governing body in American collegiate sports, the NAIA includes 237 institutions in 21 conferences. *Amicus Curiae* President Ellis served on the NAIA Council of Presidents when, at the request of the Council, the NAIA formed a task force in April 2022. *See* NAIA Transgender Task Force, https://www.naia.org/transgender/index (last accessed Oct. 15, 2024).

Like the NCAA's policy before January 2022, the NAIA's policy at the time the task force was formed allowed male athletes to compete on women's teams if they asserted a gender identity as female and undertook a year of androgen suppression. *Id*. The NCAA changed its policy in January 2022 so that the applicable Olympic national governing body ("NGB") policy for each sport corresponded to the NCAA's policy for each sport. *Id*.[2]

President Ellis and the rest of the Council of Presidents subsequently assigned the NAIA's task force to review the NAIA's

---

[2] Under International Olympic Committee policy, the NGB for each sport determines whether men may compete against women in female events. For sports where no applicable NGB policy exists, the NCAA expects to use either United States Olympic & Paralympic Committee policy or International Federation Policy. *Id*.

7

existing policies governing sports participation. *Id.* The Council directed the task force to determine whether there was a need to modify current policy. *Id.* If so, the Council further charged the task force with proposing recommended changes for the Council of Presidents to consider. *Id.*

24 months of diligent study ensued, ultimately producing a new policy governing participation and competition on female sports teams. *Id.* The Council of Presidents unanimously approved the policy on April 8, 2024, with an effective date of August 1, 2024. *Id.*

The task force and the Council of Presidents assiduously avoided stereotyping and stereotypes. Instead, the task force's two-year study demonstrated the relevance of biological sex to "supporting the fair and safe competition opportunities for all student athletes." NAIA Transgender Participation Policy (Apr. 8, 2024), https://www.naia.org/transgender/files/TG_Policy_for_webpage_v2.pdf (last visited Oct. 15, 2024) ("NAIA Policy").

The underlying foundation for the NAIA Policy included creating a fair playing field, ensuring safety for competing athletes, and precluding male athletes from unfairly taking scholarship positions of female athletes. *Id.*

The task force study found that each NAIA male and female sport "includes some combination of strength, speed, and stamina, providing competitive advantages for male student athletes." *Id.*; *see also* Doriane

Lambelet Coleman, *Sex in Sport*, 80 LAW & CONTEMP. PROBS. 63, 74 (2017). As to whether NAIA policy should permit men to compete against women in female sports, the task force study found that each of these facts rationally relate to – and are necessary for – creating a fair playing field, ensuring safety for competing athletes, and precluding male athletes from unfairly taking scholarship positions of female athletes. NAIA Policy.

Understanding the significant impact of biology in sports competition, the NAIA therefore reasonably and necessarily "created separate categories for male and female participants." *Id.*; *see also Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (applying objective biological understanding of sex as immutable in recognizing inherent difference between boys and girls); *United States v. Virginia*, 518 U.S. 515, 533 (1996) (recognizing that "[p]hysical differences between men and women … are enduring" and that "[i]nherent differences between men and women, we have come to appreciate, remain cause for celebration, but not for denigration of the members of either sex or for artificial constraints on an individual's opportunity").

As the NAIA did, this Court ought to approach with caution cultural calls to cancel objective biological science in the context of statutes like Title IX. Medical experts in Europe now recognize that the "use of masculinizing / feminizing hormones … present many unknowns

….." Hillary Cass, M.D., *Independent review of gender identity services for children and young people* (2024), https://cass.independent-review.uk/wp-content/uploads/2024/04/CassReview_Final.pdf (last viewed Oct. 15, 2024) (results of a four-year review commissioned by the United Kingdom's National Health Service).

Indeed, the "strengths and weaknesses of the evidence ... are often misrepresented and overstated, both in scientific publications and social debate." *Id.* While "a considerable amount of research has been published in this field, systematic evidence reviews demonstrated the poor quality of the published studies, meaning there is not a reliable evidence base upon which to make clinical decisions, or … to make informed choices." *Id.*

Moreover, elevating self-identifying subjective gender fluidity over the objective biological truth that sex is immutable results in the unfair and unjust outcomes for female athletes that the appellees in this case have articulated in their complaint. *See* Women's Sports Policy Working Group, *578+ Male\* Victories in Female Sports*, https://womenssportspolicy.org/253-male-victories-in-female-sports/ (last visited Oct. 15, 2024) (cataloguing victories by men identifying as women over women in female sports).

With this unfairness as a backdrop, it is important to understand that under the NAIA Policy, *no athlete is prevented from NAIA competition*. To be sure, the NAIA Policy provides clear lanes as to in

10

which category the athlete competes. "All eligible NAIA student-athletes may participate in NAIA-sponsored male sports," including "[a] student who has begun masculinizing hormone therapy …." NAIA Policy. But "[o]nly NAIA student-athletes whose biological sex is female may participate in NAIA-sponsored female sports." *Id.* As well, besides providing every athlete with a fair opportunity to compete, the NAIA policy also recognizes the natural inherent dignity of human beings by ensuring "appropriate privacy protections" for athletes. *Id.*

Some male athletes continue to self-identify as female. Subjectively fluid gender identity formulations continue to collide with objective biological science showing sex as immutable. And federal courts continue to split over whether to choose truth or fiction in resolving these cases and controversies arising under the Constitution and laws of the United States. This case provides the opportunity for the Court to help resolve existing jurisprudential conflict and restore predictability to this nation's jurisprudence, just as the NAIA task force did with the NAIA Policy in the academy.

## **Conclusion**

This Court should affirm the district court's preliminary injunction.

Respectfully submitted,

*Jonathan Sternberg, Attorney, P.C.*

by /s/Jonathan Sternberg
Jonathan Sternberg, Kan. #25902
  *Counsel of Record*
2323 Grand Boulevard #1100
Kansas City, Missouri 64108
(816) 292-7020
jonathan@sternberg-law.com

William Wagner
Great Lakes Justice Center
5600 West Mount Hope Hwy
Lansing, MI 48917
(517) 643-1765
Prof.WWJD@gmail.com

COUNSEL FOR *AMICUS CURIAE*

**Certificate of Compliance with Type-Volume Limitation,
<u>Typeface Requirements, and Typestyle Requirements</u>**

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(a)(5), because this brief contains 1,924 words excluding the parts of the brief exempted by Rule 32(f).

I further certify that this brief complies with the typeface requirements of Rule 32(a)(5) and typestyle requirements of Rule 32(a)(6), because this brief has been prepared in a proportionally spaced typeface, Century Schoolbook size-14 font, using Microsoft Word for Office 365.

I further certify that the electronic copies of both this brief and its addendum filed via the Court's ECF system are exact, searchable PDF copies of the originals, that they were scanned for viruses using Microsoft Windows Defender, and that according to that program they are free of viruses.

<u>/s/Jonathan Sternberg</u>
Attorney

# Certificate of Service

I certify that on October 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/Jonathan Sternberg
Attorney