# The United States Court of Appeals for the Tenth Circuit

---

### No. 24-3097

---

STATE OF KANSAS; STATE OF ALASKA; STATE OF UTAH; STATE OF WYOMING; SHAWNA ROWLAND; AS MOTHER ON BEHALF OF K.R., A MINOR, MOMS FOR LIBERTY; YOUNG AMERICA'S FOUNDATION; FEMALE ATHLETES UNITED,

*Plaintiffs – Appellees*

*versus*

UNITED STATES DEPARTMENT OF EDUCATION; MIGUEL CARDONA, UNITED STATES SECRETARY OF EDUCATION, *in his official capacity;* UNITED STATES DEPARTMENT OF JUSTICE; MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL, *in his official capacity,*

*Defendants – Appellants*

---

Appeal from the United States District Court
for the District of Kansas-Topeka
USDC No. 5:24-CV-04041-JWB-ADM

---

**BRIEF OF *AMICUS CURIAE*
INDEPENDENT COUNCIL ON WOMEN'S SPORTS
AND 135 FEMALE ATHLETES, COACHES, SPORTS OFFICIALS,
AND PARENTS OF FEMALE ATHLETES
IN SUPPORT OF APPELLEES AND AFFIRMANCE**

---

WILLIAM BOCK III
KROGER GARDIS & REGAS, LLP
111 MONUMENT CIRCLE, SUITE 900
INDIANAPOLIS, IN 46204
TEL: (317) 692-9000

*Counsel for Amici Curiae*

## **DISCLOSURE STATEMENT**

The undersigned counsel confirms that neither the Independent Council on Women's Sports (ICONS), nor any of its members has a parent corporation and no publicly held corporation owns 10% or more of the stock of ICONS of any of its members.

# TABLE OF CONTENTS

DISCLOSURE STATEMENT .................................................................. i

TABLE OF AUTHORITIES .................................................................. iv

INTEREST OF *AMICI CURIAE* .......................................................... 1

SUMMARY OF ARGUMENT ................................................................ 3

ARGUMENT .......................................................................................... 7

I.  SEX IS A BIOLOGICAL FACT AND ATHLETIC PERFORMANCE IS
    TIED DIRECTLY TO SEX ........................................................... 7

    A.  Biological Sex is the Dominant Factor Influencing Sport Performance
        ............................................................................................. 10

    B.  Male Sport Performance Advantage is Clearly Apparent at Every Age,
        Even Pre-Puberty .................................................................. 12

        1.  Higher Androgen Levels in Male Infants ................................ 14

        2.  Differences in Pre-Pubertal Skeletal Size and Strength .......... 16

        3.  Male-Female Differences Elude Complete Description in any
            Space Limited Survey ...................................................... 17

    C.  Male Advantage Exists Even After Attempts to Suppress Testosterone
        Levels .................................................................................. 18

II. SEX SEPARATION IS ESSENTIAL TO PRESERVING FEMALE
    OPPORTUNITIES IN SPORT .................................................... 19

    A.  A Category for Female Athletes Based on Sex is How Women
        Participate in Sport Equally to Men ...................................... 19

    B.  Without Protection of the Girl's Category Girls Will Drop Out of
        Competitive Sport ................................................................ 20

    C.  Requiring Eligibility Rules Not Based on Objective Criteria Harms
        Women and Sport .................................................................. 20

    D.  Georgia Senate Hearings ....................................................... 21

    E.  Enormous Performance Advantage Enjoyed by a Mediocre Male
        When Competing Against Elite Female Athletes ...................... 24

F.    Women's Rights to Sex Separated Spaces and Bodily Privacy are Violated by Permitting Men to Use Women's Locker Rooms and Showers .................................................................................25

G.    Brooke Slusser, Current NCAA Volleyball Player.............................27

CONCLUSION ..................................................................................28

CERTIFICATE OF COMPLIANCE .......................................................29

CERTIFICATE OF SERVICE ..............................................................30

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*A.C. by M.C. v. Metropolitan School District of Martinsville*,
  75 F.4th 760 (7th Cir. 2023) ......................................................................5

*A.M. by E.M. v. Indianapolis Public Schools*,
  617 F.Supp.3d 950, (S.D. Ind. 2022) ................................................ 5, 13, 15-17

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022) ................................................................6, 9

*B.P.J. by Jackson v. West Virginia State Board of Education*,
  98 F.4th 542 (4th Cir. 2024) ..................................................................5, 14

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ................................................................3-6, 8-9

*Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*,
  695 F.2d 1126 (9th Cir. 1982) ................................................................9

*D.N. by Jessica N. v. DeSantis*,
  701 F. Supp. 3d 1244 (S.D. Fla. 2023) ................................................................6

*Dep't of Educ. v. Louisiana*,
  144 S. Ct. 2507 (Aug. 16, 2024) ................................................................7

*Doe v. Hanover County School Board*,
  2024 WL 3850810 (E.D. Va. Aug. 16, 2024) ........................................................5

*Doe v. Horne*,
  115 F.4th 1083, (9th Cir. 2024) ................................................................5

*Doe v. Kentucky,*
  144 S. Ct. 389, 217 L. Ed. 2d 285 (2023) ..........................................................4

*Grimm v. Gloucester County School Board*,
  972 F.3d 586 (4th Cir. 2020) ................................................................5

*Hecox v. Little*,
   79 F.4th 1009 (9th Cir. 2023) ................................................................5

*L. W. by & through Williams v. Skrmetti*,
   83 F.4th 460 (6th Cir.) ...........................................................................4

*McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*,
   370 F.3d 275 (2d Cir. 2004) ...................................................................4

*Price Waterhouse v. Hopkins*,
   490 U.S. 228 (1989) ................................................................................9

*Soule v. Connecticut Ass'n of Sch., Inc.*,
   90 F.4th 34 (2d Cir. 2023) ......................................................................6

*Tirrell v. Edelblut*,
   2024 WL 3898544 (D.N.H. Aug. 22, 2024) ...........................................5

*United States v. Virginia*,
   518 U.S. 515, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) ..................... 1, 7, 8, 10

*United States v. Skrmetti*,
   144 S. Ct. 2679 (2024) ............................................................................4

Statutes

20 U.S.C. § 1681(a) ........................................................................................9

Rules

Fed. R. App. P. 29(a)(4)(E) ............................................................................1

Fed. R. App. P. 32(a)(5) ...............................................................................29

Fed. R. App. P. 32(a)(6) ...............................................................................29

Fed. R. App. P. 32(a)(7)(B) ..........................................................................29

Fed. R. App. P. 32(f)......................................................................................29

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are the Independent Council on Women's Sports (ICONS) and its members and 135 female[2] athletes, parents of female athletes, coaches and sports officials.[3] **ICONS** is a network and advocacy group comprised of current and former collegiate and professional women athletes, their families and supporters who agree with former Justice Ginsberg that "[p]hysical differences between men and women . . . are enduring [that] the two sexes are not fungible [and that] [i]nherent differences between men and women . . . remain cause for celebration[.]" *United States v. Virginia*, 518 U.S. 515, 533, 116 S. Ct. 2264, 2276, 135 L. Ed. 2d 735 (1996) ("*VMI*") (cleaned up; citations omitted).

Individual *amici* hail from all levels of sport from high school to college and from professional to Olympic sport and include: **Martina Navratilova**, 59x Grand Slam Champion in Tennis; **Donna de Varona**, Olympic Gold Medalist in Swimming, world record holder, Olympic broadcaster and long-time Title IX

---

[1] In accordance with Federal Rule of Appellate Procedure 29(a)(4)(E), counsel affirms that the undersigned counsel authored this brief, that no counsel for any party authored this brief in whole or in part, and that no party, party's counsel, or person other than the amicus curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting this brief.

[2] As used herein the terms "female" "male" "woman" "man" "women" "men" and "girls" and "boys" are used to refer to members of the female or male sex without regard to gender identification.

[3] Individual athletes, coaches, and family members are identified in **Attachment A** to this Brief.

advocate; **Laura Wilkinson**, Olympic and World Champion in Diving and parent; **Summer Sanders**, Olympic Gold Medalist; **Jill Sterkel**, Olympic Swimmer, world record holder, and University of Texas head swim coach; **Kylee Alons**, 2-time NCAA national champion in Swimming, 31x All-American and competitor against a male athlete in a NCAA women's national championship; **Grace Countie**, 22x All-American in Swimming and competitor against a male athlete in a NCAA women's national championship; **Riley Gaines**, 12x All-American in Swimming and competitor against a male athlete in a NCAA women's national championship; **Reka Gyorgy**, Olympian and All-American in Swimming and competitor against a male athlete in a NCAA women's national championship; **Kaitlynn Wheeler**, All-American in Swimming and competitor against a male athlete in a NCAA women's national championship; **Brooke Slusser**, currently co-captain on NCAA Division I San Jose State University women's Volleyball team, on which a male is a team member; **Jennifer Sees**, NCAA Track & Field athlete, high school track coach, and parent of NCAA Soccer player; **Pam Etem**, Olympic Rower; **Madisan Debos**, NCAA Track & Field athlete; **Evie Edwards**, Cyclist, mother of an elementary-age female Cyclist; and numerous other NCAA, Olympic, and Paralympic female athletes, coaches, parents and sport officials.

Reflecting their experience, *amici* have an interest in the preservation of women's only sports teams and the female category in sport.

## SUMMARY OF ARGUMENT

Recognizing biological differences between the sexes and protecting women's spaces from male intrusion are foundational for women to succeed in sports and in life.

However, through the U.S. Department of Education's recently issued Title IX regulations, the federal government seeks to constitutionalize gender identity by extending the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020) to the application of Title IX of the Education Amendments of 1972. If successful the effort would ultimately undermine the utility of Title IX and broadly open women's sport at the middle school, high school, and collegiate levels to competition from men by erasing legal recognition of biological differences between men and women that justify Title IX's protection of women, women's spaces, and women's sports.

The government's effort springs from two counterintuitive, unscientific, and legally flawed premises: (1) that a man can be transformed into a woman for all relevant purposes simply by choosing to identify as the opposite gender, and (2) that biological sex is irrelevant to the application of Title IX. Harms brought about by the federal government's new interpretation of Title IX, which is founded upon a misapplication of *Bostock*, are (and will continue to be) dramatic and far reaching

until conclusively rejected by the courts.[4] The legal revolution pursued by the federal government is intended to upend protection for women and favor the rights of men and boys who seek to identify as women and girls over the rights of women and girls in many spheres not just sports. But the focus of this brief is the impact on sport.

Rejection of the Department of Education's latest iteration of Title IX regulations is essential to uphold a key reason Title IX exists:  ensuring "equal opportunities for female athletes." *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 287 (2d Cir. 2004). It is the experience of *amici* that legal protections giving women the opportunity to take part in and succeed in sport are essential to the advancement of women and depend on the law's basic ability to distinguish between women and men and courts' capacity to evaluate, compare, and equalize the opportunities of the former in comparison to those of the latter. *Amici* urge the Court to uphold these longstanding protections now under relentless assault.

---

[4] Elsewhere, the federal government is seeking to extend *Bostock* even further beyond its Title VII employment law roots by also advancing a new *Bostock*-inspired Equal Protection analysis that would materially change current law. *See*, *e.g.*, *L. W. by & through Williams v. Skrmetti*, 83 F.4th 460, 466 (6th Cir.), *cert. dismissed in part sub nom. Doe v. Kentucky*, 144 S. Ct. 389, 217 L. Ed. 2d 285 (2023), and *cert. granted sub nom. United States v. Skrmetti*, 144 S. Ct. 2679 (2024)). In *Skrmetti* the federal government is challenging a Tennessee statute regulating the off label use of powerful drugs and irreversible genital surgeries to "transition" minors, contending that trans-identifying minors, including pre-pubertal children, should be regarded a quasi-suspect class, rendering Tennessee unable to regulate life-altering interventions to young children. *United States v. Skrmetti*, Case No. 23-477, Brief for the Petitioner at 28-32.

The impact of constitutionalizing gender identity as an extension of *Bostock* has in the last four years opened women's sports and safe spaces to biological males. *See*, *e.g.*, *Doe v. Horne*, 115 F.4th 1083, 1107, (9th Cir. 2024) (scholastic sports); *B.P.J. by Jackson v. West Virginia State Board of Education*, 98 F.4th 542, 563 (4th Cir. 2024) (scholastic sports); *Hecox v. Little*, 79 F.4th 1009, 1026 (9th Cir. 2023) (college sports); *A.C. by M.C. v. Metropolitan School District of Martinsville*, 75 F.4th 760, 767 (7th Cir. 2023) (bathrooms); *Grimm v. Gloucester County School Board*, 972 F.3d 586, 616 (4th Cir. 2020) (bathrooms); *Tirrell v. Edelblut*, 2024 WL 3898544, *3 (D.N.H. Aug. 22, 2024) (scholastic sports); *Doe v. Hanover County School Board*, 2024 WL 3850810, *6 (E.D. Va. Aug. 16, 2024) (scholastic sports); *A.M. by E.M. v. Indianapolis Public Schools*, 617 F.Supp.3d 950, 962+, (S.D. Ind. 2022) (scholastic sports).

But other courts have been properly circumspect and taken the *Bostock* majority at their word that their decision was *not* meant to "sweep beyond Title VII to other federal or state laws that prohibit sex discrimination" and that even under Title VII the Court did not "purport to address bathrooms, locker rooms, or anything else of the kind." *Bostock*, 590 U.S. at 681 ("The only question before us is whether an employer who fires someone simply for being homosexual or transgender has discharged or otherwise discriminated against that individual 'because of such individual's sex.'"). These courts apply the plain language of Title IX and its

implementing regulations and recognize that allowing trans-identifying men and boys to take women's and girls' places in sport and intrude in their safe spaces undermines Title IX. *See Soule v. Connecticut Ass'n of Sch., Inc*., 90 F.4th 34, 62 (2d Cir. 2023) ("*Bostock* did not establish that assigning sports teams based on biological sex would constitute discrimination, much less hold that discrimination based on transgender status is generally prohibited under federal law.") (Menashi, J. and Park, J., concurring) (cleaned up); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty*., 57 F.4th 791, 821 (11th Cir. 2022) ("the district court's conclusion that the meaning of 'sex' in Title IX includes 'gender identity' would open the door to eroding Title IX's beneficial legacy for girls and women in sports") (Lagoa, J., concurring); *D.N. by Jessica N. v. DeSantis*, 701 F. Supp. 3d 1244, 1264 (S.D. Fla. 2023) ("There simply is no alternative definition of 'sex' for transgender persons as compared to nontransgender persons under Title IX.") (scholastic sports) (quoting *Adams*).

The federal government's proposed extension of *Bostock* to reimagine Title IX as a tool to advance trans ideology, if accepted by this Court and ultimately by the U.S. Supreme Court, would gut longstanding protections for women under both Equal Protection and Title IX. However, thankfully, it appears that is not going to happen any time soon. Just recently, the U.S. Supreme Court unequivocally rejected the federal government's guiding light: its theory *Bostock* should revamp the application of Title IX. Two months ago, responding to the federal government's

petition to stay a Louisiana district court ruling enjoining the new Title IX regulations, all nine Justices found that plaintiffs challenging the new Title IX regulations will likely succeed on the ground that the new regulations improperly redefine sex discrimination to include discrimination on the basis of sexual orientation and gender identity. *Dep't of Educ. v. Louisiana*, 144 S. Ct. 2507, 2509–10 (Aug. 16, 2024) (agreeing Louisiana was "entitled to preliminary injunctive relief as to three provisions of the rule, including the central provision that newly redefines sex discrimination to include discrimination on the basis of sexual orientation and gender identity"). Because this Court is bound to follow the Supreme Court's lead, rejection of the Department of Education's request for stay in *Dep't of Educ. v. Louisiana* should control the outcome of this appeal and result in affirmance of the District Court.

This Court should affirm the district court's order rejecting a new Title IX Rule that will only deprive women of fair competition in scholastic sport and increase the harms being faced by women in sport.

## ARGUMENT

## I.    SEX IS A BIOLOGICAL FACT AND ATHLETIC PERFORMANCE IS TIED DIRECTLY TO SEX

In her seminal decision in *United States v. Virginia* Justice Ruth Bader Ginsberg wrote that that "[p]hysical differences between men and women . . . are enduring [that] the two sexes are not fungible [and that] [i]nherent differences

between men and women . . . remain cause for celebration[.]" *VMI*, 518 U.S. at 533 (cleaned up; citations omitted). She went on to recognize that, "[a]dmitting women to VMI would undoubtedly require alterations necessary to afford members of each sex privacy from the other sex in living arrangements[.]" *VMI*, 518 U.S at 550 n.19. In other words, equal access for women at a previously all male school necessarily required recognition of a right to bodily privacy for natal women from natal men because men and women are physically different. This applies just as much to sports locker rooms where women may be entirely unclothed as it applies to the "living arrangements" described in *VMI*.

Thus, the Supreme Court in *VMI* recognized that physiological differences between men and women must be considered where such differences are relevant, and therefore, *when such differences are relevant* relying upon them does not constitute sex stereotyping or sex discrimination. The Court's decision in *VMI* was certainly not overturned by *Bostock*. Thus, *Bostock* cannot be properly read as overturning or rewriting Title IX either and, as explained below, Title IX requires that biological sex be considered to ensure equal opportunities for women in comparison to men.

Indeed, the impetus for the Court's decision in *Bostock* was simply that under Title VII "sex" is "not relevant *to employment decisions*." *Bostock*, 590 U.S. at 660 (emphasis added). In other words, "[a]n individual employee's sex is 'not relevant

to the selection, evaluation, or compensation of employees." *Id.* (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 239 (1989)). However, *Bostock* never says that biological sex is never relevant under either Title VII or Title IX.

Indeed, the idea that biology (i.e., differences between the sexes) can and should be considered in evaluating the allocation of opportunities between the sexes is the entire basis for Title IX. Title IX pursues the goal of equalizing opportunities for women by extending its protections based on "sex." Title IX states: "No person … shall, *on the basis of sex*, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving" federal assistance. 20 U.S.C. § 1681(a) (emphasis added). It forbids treating women worse than men based on sex.

No one should dispute that "sex" means the physiological or "biological distinctions between male and female." *Bostock*, 590 U.S. at 655. This is patently true for sports. *Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982). Moreover, Title IX does not reference gender identity. *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 814 (11th Cir. 2022). ("There simply is no alternative definition of 'sex' for transgender persons as compared to nontransgender persons under Title IX.").

Sex distinctions are necessary to ensure equal educational opportunities because men and women are different, their "[p]hysical differences" are "enduring."

*VMI*, 518 U.S. at 533. Therefore, Title IX not only *permits* sex-based distinctions, but where necessary to ensure equal opportunity for women it *requires* them. This is fortunate because, as explained below, in relation to sport women could never have equal opportunities without sex-separated women's sports teams.

## A. Biological Sex is the Dominant Factor Influencing Sport Performance

A recent peer reviewed study reports that post puberty "the performance gap between males and females . . . often amounts to 10–50% depending on sport."[5] "Sex is a major factor influencing best performances and world records"[6] in Olympic sport. In a study of performance by some of the most highly trained athletes in the world, researchers evaluated 82 quantifiable events since the beginning of the Olympic era (*i.e.*, from 1896 to 2007). They found men outperformed women in all sports with a mean difference of 10.0% ± 2.94% between them depending upon event.[7]

---

[5] Hilton, E.N., Lundberg, T.R., "Transgender Women in the Female Category of Sport: Perspectives on Testosterone Suppression and Performance Advantage," *Sports Medicine* (2021) 51:199-214, p. 199 (hereafter "Hilton & Lundberg, Female Category of Sport").

[6] Thibault, V., Guillaume, M., Berthelot, G., El Helou, N., Schaal, K., Quinquis, L., Nassif, H., Tafflet, M., Escolano, S., Herine, O., Toussaint, J.F., "Women and men in sport performance: The gender gap has not evolved since 1983," *Journal of Sports Science and Medicine* (2010) 9, 214-223, p. 214, *available at*: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3761733/

[7] *Id.* They also observed many of these timed performances for women "coincided with later-published evidence of state-institutionalized or individual doping,"

"There is a clear sex difference in both muscle mass and strength even adjusting for sex differences in height and weight. On average women have 50% to 60% of men's upper arm muscle cross-sectional area and 65% to 75% of men's thigh muscle cross-sectional area, and women have 50% to 60% of men's upper limb strength and 60% to 80% of men's leg strength. Young men have on average a skeletal muscle mass of >12 kg greater than age-matched women at any given body weight."[8] The impact is "an obvious performance enhancing effect[.]"[9]

"[O]n average men are 7% to 8% taller with longer, denser, and stronger bones, whereas women have shorter humerus and femur cross-sectional areas being 65% to 75% and 85%, respectively, those of men."[10] The athletic advantages conferred by men's larger and stronger bones includes, "greater leverage for muscular limb power exerted in jumping, throwing, or other explosive power activities" and greater male protection from stress fractures.[11]

---

suggesting the gender gap is actually even larger than the reported statistical differences.

[8] Handelsman, D.J., Hirschberg, A.L., Bermon, S., "Circulating Testosterone as the Hormonal Basis of Sex Differences in Athletic Performance," *Endocr. Rev.* 2018 Oct; 39(5): 803-829 (hereafter, "Handelsman, et al., Sex Differences in Athletic Performance").

[9] *Id*.

[10] *Id*.

[11] *Id*.

11

The sex-based performance gap is not limited to certain sports but applies generally to most skills necessary for success in sport. The following chart illustrates male advantage across a wide group of discrete sport skills.



Fig. 1 The male performance advantage over females across various selected sporting disciplines. The female level is set to 100%. In sport events with multiple disciplines, the male value has been averaged across disciplines, and the error bars represent the range of the advantage. The metrics were compiled from publicly available sports federation databases and/or tournament/competition records. *MTB* mountain bike

Reproduced from: Hilton & Lundberg,
Female Category of Sport p. 202, Fig. 1.

## B.    Male Sport Performance Advantage is Clearly Apparent at Every Age, Even Pre-Puberty

As the foregoing makes clear, the sex-based sport performance gap is not just real, it is massive. Furthermore, male-female performance differences exist from the earliest stages, including in youth sports. Study after peer-reviewed study has shown clear performance advantages for males in sport *pre-puberty*.[12]

---

[12] *See*, *e.g.*, age group standards in USA swimming reflective of male advantage at every age, distance and stroke, available at: https://www.usaswimming.org/docs/default-source/timesdocuments/time-standards/2024/2021-2024-national-age-group-motivational-times.pdf.

For instance, a comprehensive review of fitness data from over 85,000 Australian children aged 9-17 years showed that compared to 9-year-old females, 9-year-old males were faster at short sprints (9.8%) and one mile (16.6%), could jump 9.5% further from a standing position (a test of explosive strength), could complete 33% more push-ups in 30 seconds and had a 13.8% stronger grip.[13] A similarly large advantage for males was found in a study of Greek children, in which 6-year-old males, compared to 6-year-old females, completed 16.6% more shuttle runs in a given time and could jump 9.7% further from a standing position. In terms of aerobic endurance capacity, 6–7-year-old males were shown to have higher absolute and relative (to body mass) maximum oxygen uptake than 6–7-year-old females.[14] Numerous similar peer reviewed studies were cited in expert reports of Dr. Tommy Lundberg of the Karolinska Institute in Stockholm and of Dr. Emma Hilton of the University of Manchester, UK, at the injunction phase in the *A.M.* case.[15]

---

[13] Catley MJ, Tomkinson GR. Normative health-related fitness values for children: analysis of 85347 test results on 9-17-year-old Australians since 1985. *Br J Sports Med*. 2013 Jan;47(2):98-108.

[14] Tambalis KD, Panagiotakos DB, Psarra G, Daskalakis S, Kavouras SA, Geladas N, Tokmakidis S, Sidossis LS. Physical fitness normative values for 6-18-year-old Greek boys and girls, using the empirical distribution and the lambda, mu, and sigma statistical method. *Eur J Sport Sci*. 2016 Sep;16(6):736-46.

[15] *A.M. by E.M. v. Indianapolis Pub. Sch.,* Case No. 1:22-cv-01075-JMS-DLP (S.D. Ind. 2022) ("*A.M.* case"), Dkt. Nos. 36-6, 36-7, 57-1, 57-2.

### 1.      Higher Androgen Levels in Male Infants

The Plaintiffs in the *B.P.J.* case contended that due to recent hormone suppression B.P.J. "will develop the same changes to bone size, skeletal structure, [and] pelvis shape . . . [among other characteristics] that are typically experienced by . . . girls who go through a typically female puberty." *B.P.J. v. W. Va. State Bd. of Educ., et al.*, Case No. 23-1078, (4th Cir. 2023), Appellants' Brief at 51 of 72. This is wrong as the studies cited below make clear. In fact, to fully mitigate the performance enhancing effects of testosterone on B.P.J. (or any other natal male) hormone intervention would had to have commenced at birth if not in the womb.

Differences in average body length (measured as head-bottom length) can be detected by ultrasound from the first trimester of pregnancy, with males already longer than females.[16] Larger average skull diameter in male fetuses at twenty weeks has been reported.[17] Gestational growth charts track not just higher male values for skull diameter but also abdominal circumference and estimated fetal weight.[18] The

---

[16] Pedersen, 1980. Ultrasound evidence of sexual difference in fetal size in first trimester. *British Medical Journal* 281(6250): 1253.

[17] Persson et al., 1978. Impact of fetal and maternal factors on the normal growth of the biparietal diameter. *Scandinavian Association of Obstetricians and Gynaecologists* 78: 21-27.

[18] Schwartzler et al., 2004. Sex-specific antenatal reference growth charts for uncomplicated singleton pregnancies at 15–40 weeks of gestation. *Ultrasound in Obstetrics and Gynaecology* 23(1): 23-29.

expert reports of Drs. Lundberg and Hilton in the *A.M.* case detail these and other significant differences in biological development between males and females.

Research has established the existence of higher levels of androgens in infant boys during the first six months of their development.[19] For instance, "[t]esticular testosterone concentrations were [found to be] maximal in boys 1-3 months of age, with peak values similar to those in pubertal or even adult testes."[20] At the same time, it was found that the adrenal glands were important "as a source of androstene-dione [another anabolic agent similar to testosterone] in male  infancy."[21] "Testosterone  and dihydrotestosterone [another steroid] levels in [umbilical] cord blood are higher in males than in females. The presence of dihydrotestosterone suggests that there is active fetal peripheral metabolism of testosterone to dihydrotestosterone [during fetal development]."[22]

Increased testosterone levels during this "mini-puberty" phase in males aged 1-6 months may be correlated with a faster growth rate and an "imprinting effect"

---

[19]  Bidlingmaier, F., Dorr, H.G., Eisenmenger, W., Kuhnle, U., Knorr, D., "Contribution of the adrenal gland to the production of androstenedione and testosterone during the first two years of life," *J Clin Endocrinol Metab*. 1986 62:331–335, *available at*: https://core.ac.uk/reader/12168690?utm_source=linkout
[20] *Id.* at 331.
[21] *Id.* at 334.
[22]  Pang, S., Levine, L.S., Chow, D., Sagiani, F., Saenger, P., New, M.I., "Dihydrostestosterone and its relationship to testosterone in infancy and childhood," *J   Clin   Endocrinol   Metab*.   1979   48:821–826,   *available   at*: https://academic.oup.com/jcem/article-abstract/48/5/821/2679038?redirectedFrom=fulltext&login=false

on body mass index and body weight.[23] This burst of testosterone is associated with higher growth velocity for males in the first six months of life,[24] higher weight gain, lower acquisition of body fat and lower body mass index.[25] Such data led Dr. Hilton to opine in the *A.M.* case that "transient exposure to testosterone in mini-puberty thus seems to underpin the well-established structural differences between males and females in childhood."[26]

## 2. Differences in Pre-Pubertal Skeletal Size and Strength

As noted above, there are differences in male skeletal structure compared to females. In one study of pre-pubertal subjects, the "cross-sectional areas of [the lumbar spine] were significantly smaller in girls than in boys."[27] The difference between the prepubertal boys and girls spine width was found to be 11%.[28] These researchers observed that because "only prepubertal children were studied, . . . our

---

[23] Lanciotti L, Cofini M, Leonardi A, Penta L, Esposito S. Up-To-Date Review About Minipuberty and Overview on Hypothalamic-Pituitary-Gonadal Axis Activation in Fetal and Neonatal Life. *Front Endocrinol* (Lausanne). 2018 Jul 23;9:410.

[24] Kiviranta et al., 2016. Transient Postnatal Gonadal Activation and Growth Velocity in Infancy. *Pediatrics* 138(1): e20153561.

[25] Becker et al., 2015. Hormonal 'minipuberty' influences the somatic development of boys but not of girls up to the age of 6 years. *Clinical Endocrinology* 83: 694-701.

[26] *A.M.* case, Dkt. No. 36-6, ¶ 3.5.

[27] Gilsanz, V., Kovanlikaya, A., Costin, G., Roe, T.F., Sayre, J., Kaufman F., "Differential Effect of Gender on the Sizes of the Bones in the Axial and Appendicular Skeletons," *Journ. of Clinical Endocrin. & Metabolism*, Volume 82, Issue 5, 1 May 1997, Pages 1603–1607 *available at*: https://academic.oup.com/jcem/article/82/5/1603/2823501?login=false

[28] *Id.*

results cannot be attributed to gender differences in the heights of upper skeletal segments, as sitting heights and the heights of the lumbar vertebrae were similar in boys and girls."[29]

### 3.  Male-Female Differences Elude Complete Description in any Space Limited Survey

Dr. Hilton reports "analysis of sex-specific genetic architecture in adults reveals some 6500 differences in gene expression, likely to influence development and function outside of hormone effects."[30] She also observed that, "male advantage over females is not limited to those physical and functional differences conferred by male morphology, shape and size. Most obviously, female athletes must typically deal with the effects of the menstrual cycle and the cyclical effects of hormones on training capacity and performance. The menstrual cycle is known to affect cardiovascular, respiratory, brain function, response to ergogenic aids, orthopedics, and metabolic parameters, and represents a barrier to athletic capacity not experienced by males."[31] In short, male-female differences impacting sport performance are so extensive they cannot be fully described in a brief.

---

[29] *Id.*

[30] *A.M.* case, Dkt. No. 36-6, ¶ 3.2, citing Gershoni and Pietrokovski, 2017. The landscape of sex-differential transcriptome and its consequent selection in human adults. *BMC Biology* 15(1): 7.

[31] *A.M.* case, Dkt. No. 36-6, ¶ 4.5.

17

### C.    Male Advantage Exists Even After Attempts to Suppress Testosterone Levels

To test the idea that testosterone suppression and feminizing hormones would eliminate male advantages in sport Drs. Hilton and Lundberg reviewed *eleven published, peer-reviewed original studies* in male individuals identifying as transgender who had undergone at least 12 months of testosterone suppression. They found a unified consensus that muscle mass and strength measurements remained far higher than in female reference subjects. Hilton & Lundberg, Female Category of Sport. Their conclusions were supported by transgender runner and scientist Joanna Harper in a second review of the same dataset who concluded while "hormone therapy decreases strength, LBM and muscle area, yet values remain above that observed in cisgender women, even after 36 months."[32]

In another recent study, boys self-identifying as girls who had received puberty blockers from around 13 years of age, then cross-sex hormones at 16 years of age grew to an average adult height (180.4cm) far larger than the population female average (170.7cm) and closer to the population male average (183.8cm).[33]

---

[32] Harper *et al*., 2021. How does hormone transition in transgender women change body composition, muscle strength and haemoglobin? Systematic review with a focus on the implications for sport participation. *British Journal of Sports Medicine* 55(15): 865-872.

[33] Boogers *et al*., 2022. Trans girls grow tall: adult height is unaffected by GnRH analogue and estradiol treatment. *Journal of Clinical Endocrinology and Metabolism*.

## II.  SEX SEPARATION IS ESSENTIAL TO PRESERVING FEMALE OPPORTUNITIES IN SPORT

### A.  A Category for Female Athletes Based on Sex is How Women Participate in Sport Equally to Men

The only way sport can be fair and equal for women is with a protected women's category that excludes competitors with male advantage. Title IX was enacted in part to promote, and in some cases require, just such sex separation in sport that advances women.

The crowning achievement of Title IX has been its capacity to propel women to success in male dominated businesses.[34] The reason for this, of course, is because Title IX's *raison d'etre* has always been to fight discrimination *against* women. This rationale is turned on its head, however, by efforts such as Petitioner's to require girls to face boys in competition. The participation of men in women's sport will ultimately lead to the exclusion of women, as explained above, it's a simple matter of physiology.

---

[34] *See* "Ernst & Young Studies The Connection Between Female Executives And Sports," ("90% of the women surveyed had played sports . . . with this proportion rising to 96% among C-suite women"), *available at*: https://www.forbes.com/sites/alanaglass/2013/06/24/ernst-young-studies-the-connection-between-female-executives-and-sports/?sh=7338319633a2; Stevenson, B., "Beyond the Classroom: Using Title IX to Measure the Return to High School Sports," National Bureau Of Economic Research, *available at*: https://www.nber.org/system/files/working_papers/w15728/w15728.pdf.

## B.    Without Protection of the Girl's Category Girls Will Drop Out of Competitive Sport

*Amici* Janel Jorgensen McArdle, an Olympic swimmer who competed against doped East German swimmers, explains that had she been confronted with doping in her sport before she reached the Olympics she likely would have dropped out. She expects this may happen to girls forced to compete against boys. Her concerns are substantiated by reports of women in other sports who have chosen not to compete against males because they understand they "have zero chance, so what is the point of wasting our money on registration fees?"[35]

## C.    Requiring Eligibility Rules Not Based on Objective Criteria Harms Women and Sport

Fixed rules are "fundamental in representing the boundaries of fair sporting competition." [36] To facilitate competitive fairness, increase sport opportunities and protect the safety of athletes, objective eligibility rules such as age limits, amateurism rules, anti-doping rules, paralympic disability classifications, skill or time qualifying standards, senior classifications, weight categories and sex-based categories are essential.

Until recently objective rules have not been considered subject to an athlete's decision to opt out of compliance. Wrestlers and boxers for instance are still not able

---

[35] *See*, *e.g.*, https://quillette.com/2022/09/28/is-this-the-lia-thomas-of-disc-golf/.
[36] Handelsman, *et al.*, Sex Differences in Athletic Performance, p. 806.

to self-declare their preferred weight class. Adults may not compete in junior categories no matter how unskilled the adult or how much better it might make them feel to compete with the children they may wish they were. Yet, whenever objective criteria are abandoned in favor of self-defined entry criteria the results tend to be unfair, administratively unworkable, and destructive to sport. [37] The same is true for allowing males to self-designate into the female category.

### D.    Georgia Senate Hearings

A special committee of the Georgia Senate is currently conducting hearings regarding the 2022 NCAA Division I Women's Swimming and Diving Championships at which trans-identifying male Lia Thomas (formerly Will Thomas) a previous member of the University of Pennsylvania (UPenn) Men's Swimming Team was permitted to compete in the women's National Championships and share a locker room with some 300 women swimmers and divers without the NCAA or host Georgia Tech University informing the women in advance that a man would be using the women's locker room during the Championships.

On August 27, 2024, five courageous women and *amici* here, Kylee Alons (North Carolina State University), Grace Countie (University of North Carolina),

---

[37] For instance, the former head of the International Paralympic Committee (IPC) recently called for reform to save the integrity of the Games due to Paralympians self-declaring disability. *See* https://www.abc.net.au/news/2023-04-03/paralympic-games-classification-system-exploited-australian/102165924.

Riley Gaines (University of Kentucky), Reka Gyorgy (Virginia Tech University) and Kaitlynn Wheeler (University of Kentucky), who among them have won more 65 NCAA All-American honors, testified before the special Georgia Senate Committee regarding the unfairness and emotional toll resulting from a single male swimmer competing in the 2022 NCAA women's championships.[38]

In 2022 Thomas won an NCAA women's championship in the 500-yard freestyle event in which he had been only the 65th ranked male in the country when on the UPenn men's team. Thomas achieved first team All-American honors (*i.e.*, a top eight finish) in all three events he entered, displacing women in each event. Even worse for some was that the first time many of the women competitors learned that Thomas would be using the women's locker room was when he entered the locker room and began undressing in front of them while many of the women were in various stages of undress, including some who were fully nude, without their consent or opportunity to protect themselves.

For some of the country's top collegiate swimmers the experience of competing against a man in a women's championship was deeply disorienting and

---

[38] The videotaped testimony of these women can be viewed at:
https://www.legis.ga.gov/schedule/senate/AQIARgAAAxpEc5CqZhHNm8gAqgA
vxFoJAGeQLC1kSDdIixjC7EHFmfIAAAJaYgAAANZQGGA2fqFiaHBHrewZqJ
2eET4ABFxyqioAAAAuAAADGkRzkKpmEc2byACqACGGA2fEWgMAZ5AsL
WRIN0iLGMLsQcWZ8gAAAlpiAAAA

emotionally painful. Thirty-one-time All-American Kylee Alons testified that she was "still grieving it" more than two years later.

Twenty-two-time All-American Grace Countie recalled that the pressure of competing in the national championship against a male with enormous physical advantages caused her to start "shaking" and to become "so nauseous I thought I was going to throw up." It "was the only time in [her] swimming career that [she] had ever cried before a race." She spent her time pre-race "sitting in the ready room trying to convince myself that what I was going to experience was normal." When she dove into the pool she "black[ed] out" and could not execute her race plan, merely going through the motions.

Riley Gaines described it, "a cruel, traumatizing, psychological experiment that pretends that it's fair and just and compassionate for a man to take from women, that pretends it is normal for a man to be given access to a woman's safe spaces, and that requires women to accept it all without saying anything lest they hurt the feelings of the man." She said it was as if the collegiate women were being told, "[i]gnore the threat of men, ladies. Don't worry if a guy follows you into the bathroom. Abandon your instincts that something is off. Loosen your boundaries, stay quiet and take your pants off anyways, get undressed, and stay quiet. That's the message that we received."

### E.   Enormous Performance Advantage Enjoyed by a Mediocre Male When Competing Against Elite Female Athletes

In the 500-yard freestyle final Thomas beat University of Virginia swimmer Emma Weyant by more than a body length. Weyant is one of the most technically proficient female swimmers in the world, a two-time Olympic silver medalist in the 2021 (Tokyo) and 2024 (Paris) Olympic Games. Alons testified that, "Thomas was not a technically proficient swimmer and had only qualified for the NCAA Championships because of the physical advantages he possessed as a man." Nevertheless, because Thomas was allowed to compete against Weyant, Thomas "stole the championship celebration from her, a moment for which Emma had worked her whole life." While competing as a male Thomas was unable to qualify for the NCAA Championships. However, competing against women he won All-American honors in all three events, including in the 200-yard freestyle, an event in which he had not even been ranked among the top 550 male NCAA swimmers.

Thomas prevented multiple women from receiving All-American honors. One was Reka Gyorgy, a Virginia Tech University swimmer and Olympian from Hungary who had also represented her country in multiple European Championships. Thomas displaced Reka from an All-American honor in the 500-yard freestyle event at Reka's last collegiate meet. Reka explained, "[b]efore 2022 I never had to prepare myself mentally to swim in competition against a man who is physically bigger and

much stronger than I am. This isn't something you can realistically prepare for or compete with because it simply is not a fair match."



Photo 1: The podium at the 2022 NCAA Women's Swimming and Diving Championships where a male won and took the place of Reka Gyorgy.

### F.      Women's Rights to Sex Separated Spaces and Bodily Privacy are Violated by Permitting Men to Use Women's Locker Rooms and Showers

Women swimmers at the 2022 NCAA National Championships testified to being traumatized by the presence of a 6-foot four-inch male with fully intact male genitalia in their locker room. Kaitlynn Wheeler recalled the first time she learned a man had been given access to the women's locker room:

> Suddenly, the usual buzz of conversation in the locker room noticeably shifted to one of discomfort, awkwardness, and fear. I turned around, exposed and bare, while still inching up my racing suit, only to see a very large 6'4" man just 10 feet from me. I realized it was Lia Thomas. I was completely shocked and caught off guard. I immediately reached for my towel. He put his belongings down near me and proceeded to pull down his pants and begin changing in front of me.

I was stuck in the most uncomfortable position of my life, with only half of my racing suit pulled up in the presence of a naked man. This felt far from a normal experience – it felt extremely wrong. I glanced around at the other girls and saw that they too were covering themselves, trying to huddle on the opposite side of the locker room as far away from Thomas as they could get in that small space. I returned to inching my racing suit up my torso as quickly as I could manage. As soon as I could, I left the locker room, still in shock at what I had just witnessed, with every fiber of my being crying out in mental torment and humiliation. I have never felt more violated and betrayed than I did at that moment.

Riley Gaines wrote a letter to Georgia Tech University President Angel Cabrera explaining the continuing trauma being experienced by women whose privacy was not protected in the locker rooms at the Aquatics Center on the campus of Georgia Tech University:

There is one question that has come back to me over and over again over the last two years since I visited your campus as a 21-year old college student in 2022: "Why didn't you protect me?"

There are images in my mind that I cannot erase. I wish that I could erase these images, that day after day make me feel less safe as a woman. They repeat in my mind late at night when I'm alone, when I'm walking a City street by myself at night, whenever I feel vulnerable, those images come back and the same question comes to my mind, "Why didn't you protect me?" . . .

Your Georgia Tech University officials knew a naked adult man with full male genitalia was being authorized by Georgia Tech to share a locker room with hundreds of college-age women who would themselves be naked, unable to hide, unable to protect our privacy. This was intentional. This was premeditated. It was sexual harassment, and it happened right here, in the capitol city of the State of Georgia. . . Let me be clear. I label this as sexual harassment because me and the . . . hundreds of other 18–22-year-old college girls were not asked for our consent and we did not give our consent to being exploited and exposed to a 6'4" fully naked man. Because you did nothing, that man walked

into our women's locker room at your university and saw me undressed down to full nudity. . .

The experiences of women competing at the 2022 NCAA Division I Swimming and Diving Championships vividly demonstrates the gross unfairness and denial of equal opportunities arising from men competing on women's sports teams.

### G.     Brooke Slusser, Current NCAA Volleyball Player

Brooke Slusser is the senior co-captain of the NCAA Division I women's volleyball team at San Jose State University (SJSU). When transferring to SJSU for her junior season Brooke was not told a teammate was a trans-identifying male. Nor was Brooke told this new teammate's natal sex when she was encouraged by the coaching staff to live in an apartment with the male and two girls, or when Brooke was assigned to room with the male on road trips.

Months later it became public that the teammate was male. Brooke has witnessed multiple girls in practice and on opposing teams hit in the head because they were unable to react to the speed of the male's spikes, videos of which have gone viral on X due to the ferocity of the hits. Already this year, three teams in the Mountain West Conference have forfeited games to SJSU, receiving losses on their conference records to protect their women from injury. A single male player is disrupting the fairness and safety of competition throughout an entire NCAA conference.

## **CONCLUSION**

Every day that girls' and women's equal opportunity in sports is denied, is a day in which girls and women are deprived of vital chances to grow, excel and win. The District Court's injunction protecting the rights of women under Title IX should be upheld.

Respectfully submitted,

*/s/ William Bock III*
William Bock III, Atty. No. 14777-49
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail: wbock@kgrlaw.com

*ATTORNEYS FOR AMICI CURIAE*
135 Female Athletes, Coaches,
Sports Officials, and Parents of Female
Athletes

October 16, 2024

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,491 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

*/s/ William Bock III*
William Bock III, Atty. No. 14777-49
Kroger Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Tel: (317) 692-9000
Fax: (317) 264-6832
E-mail: wbock@kgrlaw.com

*ATTORNEYS FOR AMICI CURIAE*
133 Female Athletes, Coaches,
Sports Officials, and Parents of Female
Athletes

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2024, I electronically filed the foregoing *Brief of Amicus Curiae Independent Council on Women's Sports and 135 Female Athletes, Coaches, Sports Officials, and Parents of Female Athletes in Support of Appellees and Affirmance* with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ William Bock III
William Bock III

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
Phone: (317) 692-9000

**ATTACHMENT A**

**Brianna Alexander***[1]
*Cyclist*

**Catrina Allen***
*World Champion –Professional Disc Golf*

**Taylor Allen**
*West Virginia High School Athlete – Basketball and Track*

**Kylee Alons***
*31-time All-American, 5-time ACC Champion, Olympic Trials Semi-Finalist, and 2-time NCAA Champion – North Carolina State University*

**Diana Anglin-Miller**
*NCAA Champion and Cheerleading Gym Owner, Coach, and Judge*

**Hannah Arensman***
*Professional Cyclist*

**Allison Arensman***
*Professional Cyclist*

**Sarah Powers Barnhard**
*Professional Volleyball Player, Current Coach*

**Cindy Bater**
*Rowing National Team Athlete, Coach, and Educator*

**Lauren Belden***
*High School Cross-Country and Track Athlete*

**Russell Belden***
*Father of a High School Cross-Country and Track Athlete*

**Katie Blankinship***
*NCAA Swimming Athlete – Roanoke College*

---

[1] * An asterisk by a name indicates that the athlete has personally faced a male in sports competition, played on the same team as a male, or is closely related to a woman who has personally faced this.

**Marianne Bosco\***
*Fencing Athlete*

**Bonnie Brandon**
*6x All-American Swimmer, University of Arizona*

**Carol Brown**
*U.S. Women's Olympic Rowing Team 1976,1980, 1984*

**Mariah Burton Nelson**
*Former Professional Women's Basketball Player*

**Monika Burzynska\***
*NCAA Swimmer, Penn Athlete*

**Frank Busch**
*Former National Team Director of USA Swimming (5-time Olympic Coach)*

**Paula A. Cabot**
*Former Director of Education & Research, Women's Sports Foundation; Rugby Player*

**Tom Coffey**
*Former AAU Women and Girls Track Coach and California Interscholastic Track Coach*

**Kathy Smith Connor\***
*U.S. National Team Member and Mother of Daughter who Competed in the 2022 NCAA Swim Championships*

**Grace Countie\***
*22 time All-American, 12x first-team All-American, 6-time UNC School Record Holder, Olympic Trial Semifinalist – University of North Carolina*

**Catherine Curtis**
*Archery Coach*

**Madisan Debos\***
*NCAA Track Athlete*

**Courtney DeSoto***
*Mother of a Female High School Track Athlete*

**Donna de Varona**
*Olympic Gold Medalist, World Record Holder*

**Jade Dickens**
*USA Powerlifting Athlete*

**Sonni Dyer**
*Division I Collegiate Head Coach & Director of Triathlon, Queens University*
*6x Women's D2 Triathlon National Champs, 2x Women's D1 Triathlon Runner-Up,*
*3x Olympic Alumni*

**Ellie Eades**
*NCAA Tennis Athlete – University of Kentucky*

**Evie Edwards***
*Cyclist, Mother of Elementary Age Female Cyclist*

**Stephanie Elkins**
*Olympian – Swimming*

**Ainsley Erzen**
*NCAA Soccer and Track & Field Athlete, Member 2024 NCAA Division I Indoor*
*Track and Field Championship Winning Team – University of Arkansas*

**Patricia Spratlen Etem**
*U.S. Women's Olympic Rowing Team 1980, 1984*

**Ellis Fox**
*NCAA Swimming and Diving Athlete – Texas A&M University*

**Kelly Funderburk**
*Olympian – Artistic Gymnastics*

**Tom Funderburk**
*NCAA Champion – Men's Golf, Husband of Female Olympian*

**Dianna (DeeDee) Fussner***
*Pro Masters Disc Golf*

**Riley Gaines***
*12-time All-American Swimming, tied Lia Thomas in the 200 free at the 2022 NCAA Swimming & Diving Championships*

**Lori Garrison**
*NCAA athlete – Softball*

**Shawna Glazier***
*Cyclist, Triathlete*

**Pamela Behrens Golding**
*Olympian*

**Annie Grevers**
*U.S. National Team – Swimming*

**Bruce M. Guthrie**
*US Speedskating Level 2 Coach, Co-Founder, Coach, The Whatcom Speed Skating Club, 2024 Long Track Ice Speed Skating National Champion, Men's 60-64 Age Category*

**Reka Gyorgy***
*Olympian – Swimming, missed finals by one placement at NCAA Swim Championships in the 500 free where Lia Thomas won first place*

**Jan Harville**
*Olympian, Olympic Coach, Former NCAA Head Coach – Rowing*

**Rena Hedeman***
*Mother of Female Rowing Athlete*

**Destani Hobbs**
*Former USA Weightlifting Level 1 Coach and USA Weightlifting Affiliated Member/Athlete*

**Nancy Hogshead**
*Olympic Gold Medalist*

**Sarah Hokom***
*World Champion – Professional Disc Golf*

**Ceci Hopp St. Geme**
*National Team – Track; NCAA Champion 3000m*

**Vicki Huber-Rudawsky**
*2x Olympian, 8x NCAA Champion, Track and Cross-Country*

**Jen Hucke**
*2x NCAA Champion in Volleyball, Stanford*

**Patti Hupp**
*USATF Level 2 Certified Track and Field Coach, USTFCCA Technical Certified Coach, ALTIS Certified Coach*

**Jarrod Jacobi***
*Father of a Current High School Female Ski Athlete*

**Rhi Jeffrey**
*Olympic Gold Medalist – Swimming*

**Lacey John**
*Olympic Silver Medalist, NCAA Woman of the Year*

**Raime Jones***
*NCAA athlete – Swimming, lost a finals spot in Ivy League Championships to Lia Thomas*

**Scott Jones***
*Father of Female NCAA Athlete*

**Margot Kackzorowski***
*Current NCAA Swimmer, University of Pennsylvania Athlete*

**Samantha Keddington***
*Former Professional Disc Golf Athlete, missed payout qualification by one placement won by a male, Current Coach*

**Danielle Keen***
*Professional Disc Golf*

**Ronda Key***
*Disc Golf Athlete*

**Alexandra Kleinfehn**
*USA Powerlifting Athlete*

**Holly Kruchoski***
*Cyclist*

**Jess Kruchoski***
*Husband of Female Athlete who competed against a male*

**Jocelyne Lamoureux-Davidson**
*Olympic Gold Medalist – Hockey*

**Monique Lamoureux-Morando**
*Olympic Gold Medalist – Hockey*

**Lisa Larsen-Rainsberger**
*1985 Boston Marathon Champion, Former 5 Mile, 15k, 10 Mile, 30k American Record Holder*

**Donna Lopiano**
*6x National Champion, Former AD University of Texas*

**Valerie McClain**
*U.S. Women's Olympic Rowing Team 1980, 1984*

**Riona C. McCormick**
*Current Rowing Athlete*

**Nanea Merryman***
*NCAA Volleyball Athlete – Cedarville University*

**Cynthia Millen**
*Former NCAA Swim Official, Former USA Swimming National Official, Former International Paralympic Swim Official*

**Lauren Miller\***
*Current Professional Women's Golfer, Former Collegiate Golfer*

**Cynthia Monteleone\***
*Masters Track Athlete, Mother of Female Track Athlete, both of whom competed against male athletes*

**Julianna Morrow\***
*NCAA Swimming Athlete – Roanoke College*

**Lily Mullens\***
*NCAA Swimming Athlete – Roanoke College*

**Linda Muri**
*Rowing, 3x World Champion, 17x National Champion, Holder World Best Time, Collegiate National Champion and World Champion Coach*

**Martina Navratilova**
*59x Grand Slam Tennis Champion*

**Sarita Nori\***
*Mother of Female Rowing Athlete*

**Mary I. O'Connor**
*U.S. Women's Olympic Rowing Team 1980*

**Keri Phebus Olson**
*NCAA Champion – Tennis, Mother of Female Athlete*

**Jan Palchikoff**
*U.S. Women's Olympic Rowing Team 1976,1980*

**Connie Paraskevin**
*USA Olympian – Speed Skating and Track Cycling*

**Abigail Pearson\***
*Mother of two Female Athletes who have been forced to compete against males*

**Kate Pearson\***
*NCAA Swimming Athlete – Roanoke College*

**Macy Petty***
*NCAA athlete – Volleyball*

**Mary T. Plant**
*Olympic Gold Medalist and World Record Holder Swimming*

**Lori Post***
*Mother of NCAA Female Swimmer who competed against Lia Thomas*

**Susanna Price***
*NCAA Swimming Athlete – Roanoke College*

**Dennis Pursley**
*5x Olympic Coach, American Swimming Coaches Association Hall of Fame*

**Joy Rako***
*Former NCAA Division III Track and Field Athlete*

**Lynn Silliman Reed**
*1976 Olympic Bronze Medalist – Rowing*

**Kelly Rickon Mitchell**
*1980 & 1984 Olympic Rowing Athlete*

**Genoa Rossi**
*Current NCAA Water Polo Athlete, U.S. Jr. National Team*

**Kim McGinnis Russell**
*International Lacrosse Coach, USVI Women's National Team*

**Linnea Saltz***
*NCAA Track and Field Runner, 3x Big Sky Conference Champion*

**Summer Sanders**
*Olympic Gold Medalist*

**Alison Santa Ana**
*Mother of High School Softball and Cross-Country Athlete*

**Cris Santa Ana**
*Father of High School Softball and Cross-Country Athlete*

**Samantha Santa Ana**
*High School Softball and Cross-Country Athlete*

**Carter Satterfield***
*NCAA Swimming Athlete – Roanoke College*

**Halle Schart***
*NCAA Swimming Athlete – Roanoke College*

**Jennifer Sees**
*NCAA Pole Vaulter, Current High School Track Coach, Mother to a Signed NCAA Soccer Player*

**Jeri Shanteau**
*National Champion, U.S. National Team member – Swimming*

**Sharon Shapiro**
*NCAA Champion and U.S. National Team – Women's Artistic Gymnastics*

**Sandy Shasby***
*Family Member of a Female Athlete*

**DeNee Shepherd***
*Professional Disc Golf*

**Bre Showers**
*NCAA Champion – Artistic Gymnastics*

**Anne Simpson**
*NCAA Rowing Athlete*

**Bronwyn Sims**
*Athlete, Girls and Women's Gymnastics Coach*

**Brooke Slusser***
*NCAA Volleyball Player*

**Lori Stenstrom**
*National Champion, Former American Record holder, Mother of Female Athletes*

**Steve Stenstrom**
*NFL Quarterback, Father of Female Athlete*

**Jill Sterkel**
*Olympian – Swimming, Former University of Texas Head Swim Coach*

**Tracy Sundlan**
*5x Olympic Coach, Manager, and Administrator – Track and Field*

**Barry Switzer**
*Super Bowl Champion, NFL and NCAA Head Football Coach*

**Becky Switzer**
*Olympic and NCAA Coach – Women's Artistic Gynmastics*

**Maya Tait***
*NCAA Rowing Athlete*

**Inga Thompson**
*Olympian – Cycling*

**Alison Townley**
*Past Associate Executive Director, Women's Sports Foundation*

**Hollister (Holly) W. Turner**
*Past Associate Executive Director, Women's Sports Foundation*

**Leanne Venema***
*Mother of Female NCAA Swimmer*

**Eric Venema***
*Father of Female NCAA Swimmer*

**Vincent J. Ventura**
*Coach 1984 Women's Olympic Single Sculler: Charlotte Geer, Silver Medal, Co-Founder and Head Coach New York Athletic Club Women's Rowing Team 1996-2012, Former Member US Rowing High Performance Committee, US National Team Coach: 1979, 1980, 83,84, 85, 88*

**Diane Vreugdenhil**
*Olympian – Rowing*

**Sue Walsh**
*Olympian – Swimming, Coach, Sports Official*

**Claudia Westholder**
*NCAA Swimmer, Mother of Female Athlete*

**Max Wettstein**
*Father of U.S. Olympic Skateboard Team Member*

**Kaitlynn Wheeler***
*All American, NCAA Qualifier and Silver Medalist, SEC Team and Relay Champion*

**Val Whiting**
*National Champion, WNBA*

**Laura Wilkinson**
*Olympian and World Champion – Diving, Mother of Female Athlete*

**Sippy Woodhead**
*Olympian, World Record Holder – Swimming*

**Sara Younger-Merrill**
*Masters Athlete, Rowing*

**Jacqueline Zoch**
*1976 Olympic Rowing Medalist*