No. 24-3097

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

STATE OF KANSAS, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Kansas

**REPLY IN SUPORT OF EMERGENCY MOTION
FOR A PARTIAL STAY PENDING APPEAL**

*Of Counsel:*

LISA BROWN
   *General Counsel*
   *U.S. Department of Education*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK STARCHER
STEVEN A. MYERS
DAVID L. PETERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7209*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-1673*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY ........................................................................... 1

ARGUMENT ................................................................................................................. 2

I.      The preliminary injunction is overbroad. ........................................................... 2

        A.      The district court erred in enjoining severable Rule provisions that plaintiffs concede they did not challenge. .................................................... 2

        B.      The injunction is overbroad even as to the challenged Rule provisions, whose effects plaintiffs misstate. ............................... 6

        C.      Enjoining § 106.10's basic prohibition on gender-identity discrimination contravenes this Court's precedent. .................................... 8

II.     The remaining factors favor a partial stay. ..................................................... 10

CONCLUSION ........................................................................................................... 11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# INTRODUCTION AND SUMMARY

The district court's sweeping preliminary injunction of the entire Final Rule contravenes bedrock principles of equity. Disregarding the Department's express severability determination, the court enjoined numerous Rule provisions that plaintiffs did not challenge and that the court did not find unlawful. Even as to the challenged portions of the Rule, the court failed to tailor the injunction to the specific provisions (or applications thereof) that purportedly harm plaintiffs—that is, the Rule's application to sex-differentiated spaces and pronouns with respect to transgender individuals. The Department accordingly sought narrow relief, asking this Court to stay the injunction pending appeal only insofar as it sweeps more broadly than necessary to address the asserted harms. Mot. for Partial Stay (Mot.). Nothing in plaintiffs' opposition undermines the Department's entitlement to that modest relief. Pls. Opp'n (Opp'n).

Scope aside, this Court's precedent forecloses the district court's injunction as applied to the Rule's core antidiscrimination provision in 34 C.F.R. § 106.10. That provision straightforwardly applies the Supreme Court's reasoning in *Bostock v. Clayton County* to clarify that recipients may not deny students educational opportunities "simply for being … transgender," 590 U.S. 644, 651 (2020). The court below concluded that *Bostock* does not apply outside the Title VII context, Dkt. No. 53, at 20 (Op.), but this Court has rejected that exact reasoning, explaining that nothing in *Bostock* "indicate[s] that its logic concerning the intertwined nature of transgender

status and sex was confined to Title VII," *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024). The district court's failure to contend with this Court's binding precedent independently justifies granting the Department's limited stay request.[1]

## ARGUMENT

### I. The preliminary injunction is overbroad.

#### A. The district court erred in enjoining severable Rule provisions that plaintiffs concede they did not challenge.

**1.** Plaintiffs offer no response to the fundamental disconnect between the defects in the Rule identified by the district court and the injunction it issued. The Rule revises numerous aspects of Title IX's current regulations, most of which have nothing to do with gender-identity discrimination. Mot. 11. Plaintiffs concededly do not challenge many of those provisions, Opp'n 9, and the district court nowhere suggested that the unchallenged provisions of the Rule were unlawful or that they would cause plaintiffs any cognizable harm. The court "clearly strayed from equity's traditional bounds" in enjoining Rule provisions that plaintiffs "failed to engage with" and "that don't presently affect them." *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring in the grant of stay).

---

[1] As plaintiffs note, Opp'n 8, the Fifth and Sixth Circuits have denied the Department's requests for interim relief pending appeals in analogous challenges to the Rule. The Department is seeking emergency relief from those decisions in the Supreme Court. *See U.S. Dep't of Education v. Louisiana*, No. 24A78; *Cardona v. Tennessee*, No. 24A79.

2

Plaintiffs wrongly assert that the injunction's scope is proper because it purportedly preserves the "status quo." Opp'n 9. But the "general maxim" that "the purpose of a preliminary injunction is to preserve the status quo … should not be taken merely at face value or become a goal in and of itself." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1001 (10th Cir. 2004) (en banc) (Seymour, J., concurring in part and dissenting in part). The touchstone of a preliminary injunction "is to prevent irreparable harm." *Id.* And where relief goes beyond addressing such harm the Supreme Court has not hesitated to issue a stay of overbroad preliminary relief. *See, e.g.*, *Labrador*, 144 S. Ct. at 921; *see also EagleMed LLC v. Cox*, 868 F.3d 893, 905 (10th Cir. 2017) (narrowing overbroad injunctive relief).

Plaintiffs also suggest that the scope of relief is proper because the district court "stay[ed]" the Rule consistent with 5 U.S.C. § 705. Opp'n 10. But the district court did not enter relief under § 705; its order is styled as a "preliminary injunction." Dkt. No. 54; *see also* Opp'n 10 (defending the court's "injunction"). In any event, a § 705 stay operates in the same manner as a preliminary injunction and is subject to the same traditional equitable principles; the statute expressly provides that courts may only delay the effective date of an agency action "to the extent necessary to prevent irreparable injury." 5 U.S.C. § 705; *see* H.R. Rep. No. 79-1980, at 43 (1946) (this relief "is equitable"). Those principles required the district court to issue a narrower injunction.

3

**2.** The injunction's overbreadth is magnified by the Rule's express severability provisions. When one provision of an agency rule is held invalid, the remaining valid provisions may go into effect "unless there is 'substantial doubt' that the agency would have left the balance of the rule intact." *Finnbin, LLC v. Consumer Prod. Safety Comm'n*, 45 F.4th 127, 136 (D.C. Cir. 2022); *see also Arizona Pub. Serv. Co. v. EPA*, 562 F.3d 1116, 1122 (10th Cir. 2009) ("We may partially set aside a regulation if the invalid portion is severable."). Plaintiffs cite no authority for their novel proposition that a court may ignore an agency's express severability determination when crafting a preliminary injunction. Opp'n 10. Instead, equitable principles and judicial respect for an agency's clear severability determination require injunctive relief to be no more burdensome than "necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).

Plaintiffs wrongly assert that the Department would not have promulgated the unchallenged provisions of the Rule absent the challenged provisions. Opp'n 13. Plaintiffs' unsupported speculation cannot be squared with the Rule's express statement that "[i]f any provision of this subpart or its application to any person, act, or practice is held invalid, the remainder of the subpart or the application of its provisions to any person, act, or practice shall not be affected thereby." 34 C.F.R. § 106.9; *see also id.* §§ 106.16, 106.24, 106.48, 106.62, 106.72, 106.82. The Department is hardly asking the Court to perform a "roving severability analysis," Opp'n 9; the entire point of including express severability provisions is to ensure that courts need

4

not guess as to the agency's intent. The severability provisions resolve any doubt that the Department would have adopted the Rule's unchallenged provisions addressing grievance procedures, lactation accommodations, and other issues not related to gender identity on their own.

Equally unavailing is plaintiffs' claim that the challenged provisions cannot be severed because § 106.10's explanation of the scope of prohibited sex discrimination "pervade[s]" the Rule. Opp'n 11. As the Department explained, Mot. 4-5, that contention cannot be squared with the operation of the unchallenged provisions, which do not depend on § 106.10, or with the Department's express severability determination, which explains that the other aspects of the Rule can and should operate independently. Schools can do things like provide lactation spaces for lactating students, keep records about sex discrimination, or publish notices of nondiscrimination without § 106.10—and certainly without applying those requirements to the narrow subset of issues such as bathrooms and pronouns upon which plaintiffs focus. *Contra* Opp'n 11-13. Indeed, plaintiffs' objection to implementing such Rule provisions absent § 106.10 overlooks that for decades, recipients have implemented Title IX's prohibition on "sex discrimination" without a regulatory provision setting out the scope of prohibited discrimination. Given that history, plaintiffs offer no reason to think that they now would be "in the dark" without such a provision. Opp'n 12.

5

Plaintiffs' unprecedented approach to severability also finds no support in *Ohio v. EPA*, 603 144 S. Ct. 2040 (2024). There, the Supreme Court stayed the challenged provisions of a rule that injured the challengers because it concluded that the agency had likely failed to adequately explain those provisions. *Id.* at 2054. Under *Ohio*, a court thus may grant relief as to provisions that it concludes are likely invalid and that injure the challengers; it does not support disregarding an agency's express severability determination by extending relief to *valid* provisions that cause the plaintiffs no harm.

Finally, the Department's severability arguments were not forfeited. As plaintiffs acknowledge, Opp'n 17, the Department's opposition to the request for preliminary relief included an express discussion of severability, *see* Dkt. No. 38, at 50, which the district court acknowledged and addressed, Op. 40. An argument pressed and passed upon below plainly has not been forfeited.

### B. The injunction is overbroad even as to the challenged Rule provisions, whose effects plaintiffs misstate.

Even as to the challenged provisions, the injunction is overbroad insofar as it enjoins provisions—and potential applications thereof—that do not cause the irreparable harms on which the district court relied.

***34 C.F.R. § 106.10.*** Plaintiffs' quarrel with § 106.10 rests upon a fundamental mischaracterization of what that provision does. Section 106.10 simply recognizes that Title IX's prohibition on sex discrimination encompasses discrimination on the basis of gender identity. Just as under Title VII an employer may not fire an

employee for being transgender, under Title IX a school may not expel a student for being transgender. Plaintiffs established no harm from this basic antidiscrimination provision; indeed, they readily agree that there are "many areas—like science fairs and student government—where" they "don't intend to discriminate against transgender students." Dkt. No. 63, at 3; *see also* Opp'n. 15. There is no justification for enjoining a provision that plaintiffs do not wish to violate and that causes them no harm.

Plaintiffs' suggestion that § 106.10 "vitiates sex-distinctions in situations … like showers and locker rooms" only underscores their misapprehension of the Rule's operation. Opp'n. 15. Section 106.10 does not "address bathrooms, locker rooms," or other sex-differentiated spaces. *Bostock v. Clayton County*, 590 U.S. 644, 681 (2020). Instead, a *separate* provision of the Rule, § 106.31(a)(2), addresses those contexts, providing that recipients may not carry out otherwise permissible sex separation in a manner that causes an individual more than de minimis harm. Because plaintiffs' concerns regarding sex-separate spaces at most implicates § 106.31(a)(2), the requested stay—under which enforcement of § 106.31(a)(2) would remain enjoined pending appeal—would address plaintiffs' harms by prohibiting the Rule from being applied to require that transgender students be permitted to access bathrooms or locker rooms consistent with their gender identity.

**34 C.F.R. § 106.2.** The injunction is also overbroad with respect to 34 C.F.R. § 106.2. Plaintiffs do not dispute that this provision defines many terms and that they object only to its definition of hostile-environment harassment. Nor do plaintiffs

7

dispute that even that aspect of their challenge—and the district court's analysis—focused only on speech regarding gender identity, such as pronoun usage and misgendering. *See* Op. 30. The court plainly erred in enjoining § 106.2 beyond the definition of hostile-environment harassment as applied to discrimination on the basis of gender identity.

### C. Enjoining § 106.10's basic prohibition on gender-identity discrimination contravenes this Court's precedent.

The district court independently erred in enjoining § 106.10 because the provision's basic prohibition on gender-identity discrimination entails a straightforward application of *Bostock*. As explained, Mot. 16-18, the Supreme Court in *Bostock* held that "discrimination based on … transgender status necessarily entails discrimination based on sex." 590 U.S at 669. Although *Bostock* arose in the context of a Title VII claim, this Court recently rejected the notion that "its logic concerning the intertwined nature of transgender status and sex was confined to Title VII." *Fowler v. Stitt*, 104 F.4th 770, 790 (10th Cir. 2024). Rather, the Supreme Court's conclusion regarding the "inextricable relationship between transgender status and sex" applies beyond Title VII to other contexts involving discrimination on the basis of gender identity. *Id.* (applying "*Bostock*'s commonsense reasoning … in the equal protection context"). In particular, *Bostock*'s reasoning applies with equal force to the materially indistinguishable prohibition on sex discrimination in Title IX. *See* Mot. 16-18; *see also Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022) ("While the language in Title

8

VII is 'because of sex' and the language in Title IX is 'on the basis of sex,' *Bostock* used those phrases interchangeably throughout the decision." (citing *Bostock*, 590 U.S. at 649-55, 666, 680)).

Plaintiffs concede that "*Bostock* said gender-identity discrimination is a *form* of sex discrimination." Opp'n 15. And they do not dispute that this Court's decision in *Fowler* makes clear that *Bostock*'s core insight applies beyond the Title VII context. *See* Opp'n 16. Nor do plaintiffs offer any explanation for why prohibiting discrimination "because of" sex under Title VII means something different than prohibiting discrimination "on the basis" of sex in Title IX.

Instead, plaintiffs once more attack a straw man, insisting that *Bostock*'s reasoning cannot apply to Title IX because the statute "authorizes sex-specific facilities and sports teams." Opp'n 15. But again, § 106.10 merely tracks *Bostock*'s conclusion that gender-identity discrimination is sex discrimination. It does not address sex-separate spaces, and nothing in the Rule addresses athletics, as the district court recognized, Op. 23. Whether and to what extent differentiating on the basis of sex constitutes prohibited discrimination is addressed by a separate Rule provision.[2] *See supra* p.7. That provision too is consistent with Title IX's plain text and basic antidiscrimination principles, as the Department will establish on appeal. But the Department is presently seeking narrower relief, requesting that this Court recognize

---

[2] Or in the athletics context, another rulemaking. *See* Op. 23.

only that plaintiffs' challenge to the Rule's core antidiscrimination provision in § 106.10—which ensures students are not denied educational opportunities "simply for being … transgender," 590 U.S. at 651—cannot be reconciled with Title IX's text or this Court's precedent.

## II. The remaining factors favor a partial stay.

The remaining factors tilt decisively in favor of the proposed stay. That stay would restore provisions that plaintiffs have not challenged, including prohibitions on things like giving a student detention because he is gay or requiring a new mother to express breastmilk in a bathroom stall. Even taking the named plaintiffs at their word that they do not intend to commit such discrimination, they cannot speak for the hundreds of schools (including newly recruited ones) to which the district court extended its preliminary injunction, *see* Dkt. No. 70, underscoring the importance of permitting § 106.10 and the majority of the Rule's provisions to go into effect promptly. And while plaintiffs claim they will incur costs to come into compliance with the Rule, Opp'n 18, those alleged costs flow from provisions and applications that either have not been held unlawful or that would remain enjoined under the requested stay. Even if those costs were relevant, they would pale in comparison to the government's interest in stamping out sex discrimination. *Cf. Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008).

# CONCLUSION

The preliminary injunction should be stayed to the extent it extends beyond the following 2024 Rule provisions: (i) 34 C.F.R. § 106.31(a)(2) and (ii) 34 C.F.R. § 106.2's definition of "hostile environment harassment" as applied to discrimination on the basis of gender identity. The Department respectfully requests a decision by July 25.

Respectfully submitted,

*Of Counsel:*

LISA BROWN
   *General Counsel*
   *U.S. Department of Education*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MELISSA N. PATTERSON
STEPHANIE R. MARCUS
JACK E. STARCHER
STEVEN A. MYERS
*/s/ David L. Peters*
DAVID L. PETERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7209*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-1673*

July 2024

# CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,489 words. This reply also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using Microsoft Word 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/David L. Peters*
David L. Peters

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*s/David L. Peters*
David L. Peters