

August 19, 2024

**VIA CM/ECF**

Christopher Wolpert
Clerk of Court
U.S. Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

    **Re:** ***Kansas v. U.S. Department of Education*, No. 24-3097 Supplemental Authority about *Department of Education v. Louisiana*, No. 24A78, & *Cardona v. Tennessee*, No. 24A79**

Dear Mr. Wolpert:

Appellees write to notify the Court about *Department of Education v. Louisiana*, No. 24A78, 2024 WL 3841071 (U.S. Aug. 16, 2024) and *Cardona v. Tennessee*, No. 24A79, 2024 WL 3841071 (U.S. Aug. 16, 2024), attached. There, the Supreme Court denied requests to stay portions of two preliminary injunctions against the recently promulgated Title IX rule. DOJ has requested identical relief in this Court, which should be denied for three reasons.

    1.    The Supreme Court rejected the same arguments DOJ makes here. In both situations, DOJ did not provide a "sufficient basis" to disturb the conclusion that the provisions found "unlawful are intertwined with and affect other provisions of the rule," nor has DOJ "adequately identified which particular provisions, if any, are sufficiently independent of the enjoined definitional provision…" *Louisiana*, 2024 WL 3841071, at *1. *See* Appellees' Stay Resp. 10-13 (arguing same).

2. The preliminary injunction here is nearly identical to those in *Louisiana* and *Tennessee*. They differ only because the former sometimes covers schools outside the plaintiff States. But DOJ did not challenge this geographic scope in its stay motion. *See* Appellants' Mot. to Stay 3, 21–22 (seeking to narrow injunction only to extent it applies beyond § 106.31(a)(2) or beyond § 106.2's harassment definition covering gender-identity discrimination).

3. At the Supreme Court, DOJ asked to stay the injunction against § 106.10 because it merely reflects "a straightforward application of" *Bostock v. Clayton County*. Appl. for Partial Stay at 5, *Cardona v. Tennessee*, No. 24A79 (U.S. July 22, 2024). But the Supreme Court left that injunction in place. Notably, "all Members of the Court" agreed that "plaintiffs were entitled to preliminary injunctive relief as to three provisions of the rule, including the central provision [§ 106.10] that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity." *Tennessee,* 2024 WL 3841071, at *1; *id.* at *4 (Sotomayor, J, dissenting in part) (agreeing to leave injunction against "the three challenged provisions," including § 106.10). Thus, DOJ did not show likely success in defending § 106.10's redefinition of sex. That dooms DOJ's stay request here.

Sincerely,

KRIS W. KOBACH
Attorney General of Kansas

*s/ Anthony J. Powell*
Anthony J. Powell
Solicitor General
120 SW 10th Avenue
Topeka, KS 66612-1597
(785) 296-7109
Anthony.Powell@ag.ks.gov

*Counsel for Appellee State of Kansas*

*s/ Jonathan Scruggs*
Jonathan A. Scruggs
ALLIANCE DEFENDING FREEDOM
15100 N. 90th St.
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@adflegal.org

*Counsel for Appellees K.R. and Female Athletes United*

*s/ Braden H. Boucek*
Braden Boucek
SOUTHEASTERN LEGAL
FOUNDATION
560 W. Crossville Rd.
Suite 104
Roswell, GA 30075
(770) 977-2131
bboucek@southeasternlegal.org

William E. Trachman
MOUNTAIN STATES LEGAL
FOUNDATION
2596 S. Lewis Way
Lakewood, CO 80227
(303) 292-2021
wtrachman@mslegal.org

*Counsel for Appellees Moms for Liberty and Young America's Foundation*

**CERTIFICATE OF COMPLIANCE**

I certify that the body of this letter contains 350 words and complies with Federal Rule of Appellate Procedure 28(j).

s/ Jonathan A. Scruggs
Jonathan A. Scruggs

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Jonathan A. Scruggs<br>
Jonathan A. Scruggs

--- S.Ct. ----
Only the Westlaw citation is currently available.
Supreme Court of the United States.

DEPARTMENT OF EDUCATION, et al.

v.

LOUISIANA, et al.

Miguel Cardona, Secretary of Education, et al.

v.

Tennessee, et al.

No. 24A78, No. 24A79
|
August 16, 2024

**Synopsis**
**Background:** In first case, State of Louisiana, three other States, Louisiana Department of Education, and Louisiana local school boards brought action against Department of Education, Secretary of Education, and other federal agencies and officials, challenging final rule issued by Department of Education, which included provision newly defining sex discrimination under Title IX to include discrimination on basis of sexual orientation or gender identity. The United States District Court for the Western District of Louisiana, Terry A. Doughty, J., 2024 WL 2978786, granted preliminary injunction to plaintiffs as to all provisions of rule, and denied, 2024 WL 3584382, defendants' motion for partial stay pending appeal. The United States Court of Appeals for the Fifth Circuit, 2024 WL 3452887, denied defendants' motion for partial stay pending appeal. Defendants filed in the Supreme Court an emergency application for partial stay pending appeal. In second case, State of Tennessee and five other States brought similar challenge to the final rule, and an association of Christian teachers and a 15-year-old girl intervened.

The United States District Court for the Eastern District of Kentucky, Danny C. Reeves, Chief Judge, 2024 WL 3019146, granted preliminary injunction to plaintiffs as to all provisions of rule, and denied, 2024 WL 3631032 and 2024 WL 3584361, defendants' motions for partial stay pending appeal. The United States Court of Appeals for the Sixth Circuit, Sutton, Chief Judge, 2024 WL 3453880, denied defendants' motion for partial stay pending appeal. Defendants filed in the Supreme Court an emergency application for partial stay pending appeal.

**Holdings:** The Supreme Court held that:

defendants failed to show likelihood of success on merits of argument that definitional provision and two other challenged provisions were severable, and

defendants failed to show that the equities favored stays.

Applications denied.

Justice Sotomayor filed an opinion dissenting in part, in which Justices Kagan, Gorsuch, and Jackson joined.

**Procedural Posture(s):** Motion for Stay.

**West Codenotes**

**Department of Education v. Louisiana, 603 U.S. ---- (2024)**
--- S.Ct. ----, 2024 WL 3841071

**Validity Called into Doubt**

34 C.F.R. §§ 106.1, 106.2, 106.3, 106.6, 106.10, 106.11, 106.15(b), 106.16, 106.17, 106.18, 106.21(a), 106.21(c), 106.30, 106.31(a), 106.40, 106.41(d), 106.44, 106.45, 106.46, 106.47, 106.51(b)(6), 106.57, 106.60, 106.71, 106.81

**Attorneys and Law Firms**

Elizabeth B. Prelogar, Solicitor General, Counsel of Record, Department of Justice, Washington, DC, for Miguel Cardona.

James A. Campbell, Jonathan A. Scruggs, Jacob P. Warner, Alliance Defending Freedom, Scottsdale, AZ, John J. Bursch, Counsel of Record, Matthew S. Bowman, Natalie D. Thompson, Alliance Defending Freedom, Washington, DC, for Respondent Rapides Parish School Board, Christian Educators Association International and A.C., by her next friend and mother, Abigail Cross.

Elizabeth B. Murrill, Attorney General, J. Benjamin Aguiñaga, Solicitor General, Counsel of Record, Autumn Hamit Patterson, Special Assistant Solicitor General, Louisiana Department of Justice, for Respondents State of Louisiana, Louisiana Department of Education, and 17 Parish School Boards.

Austin Knudsen, Attorney General of Montana, Christian B. Corrigan, Solicitor General, Peter Torstensen, Deputy Solicitor General, Montana Department of Justice, for Respondent State of Montana.

Lynn Fitch, Attorney General of Mississippi, Scott G. Stewart, Solicitor General, Justin L. Matheny, Deputy Solicitor General, Mississippi Attorney General's Office, for Respondent State of Mississippi.

Raúl Labrador, Attorney General of Idaho, Alan Hurst, Solicitor General, Josh Turner, Chief of Constitutional Litigation and Policy, Office of the Attorney General of Idaho, for Respondent State of Idaho.

Donald A. Daugherty, Jr., Senior Counsel, Litigation, Paul Zimmerman, Senior Counsel, Policy and Regulation, Martha A. Astor, Counsel, Litigation, Defense of Freedom Institute for Policy Studies, for Respondent States.

Jonathan Skrmetti, Attorney General, J. Matthew Rice, Solicitor General, Whitney D. Hermandorfer, Counsel of Record, Director of Strategic Litigation, Office of the Tennessee, Attorney General, Cameron T. Norris, Thomas S. Vaseliou, C'Zar Bernstein, Consovoy McCarthy PLLC, for Tennessee.

Russell Coleman, Attorney General, Matthew F. Kuhn, Solicitor General, Office of the Kentucky, Attorney General, for Kentucky.

Theodore E. Rokita, Attorney General, James A. Barta, Solicitor General, Indiana Attorney, General's Office, for Indiana.

David Yost, Attorney General, T. Elliot Gaiser, Solicitor General, Mathura Sridharan, Deputy Solicitor General, Office of the Ohio, Attorney General, for Ohio.

Jason S. Miyares, Attorney General, Kevin M. Gallagher, Principal Deputy Solicitor General, Brendan T. Chestnut, Deputy Solicitor General, Virginia Attorney, General's Office, for Virginia.

Patrick Morrisey, Attorney General, Michael R. Williams, Solicitor General, Office of the West Virginia, Attorney General, State Capitol, for West Virginia.

**Opinion**

Per Curiam.


**\*1** The application for a partial stay presented to Justice ALITO in No. 24A78 and by him referred to the Court is denied. The application for a partial stay presented to Justice KAVANAUGH in No. 24A79 and by him referred to the Court is denied.

The Department of Education recently issued a new rule implementing Title IX of the Education Amendments of 1972. The rule newly defined sex discrimination to "includ[e] discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33886 (2024).

Several States and other parties sought preliminary injunctions against the new rule, arguing among other things that the rule exceeded the bounds of the statutory text enacted by Congress. District Courts in Louisiana and Kentucky agreed with the plaintiffs and preliminarily enjoined enforcement of the rule in the plaintiff States. The Courts of Appeals for the Fifth and Sixth Circuits then declined to stay the injunctions in the interim period while those courts consider the Government's appeals of the preliminary injunctions.

The Government has now filed emergency applications in this Court seeking partial stays of the preliminary injunctions pending resolution of the appeals in the Fifth and Sixth Circuits. The Court denies the Government's applications.

Importantly, all Members of the Court today accept that the plaintiffs were entitled to preliminary injunctive relief as to three provisions of the rule, including the central provision that newly defines sex discrimination to include discrimination on the basis of sexual orientation and gender identity. But the Government argues (and the dissent agrees) that those provisions should be severed and that the other provisions of the new rule should still be permitted to take effect in the interim period while the Government's appeals of the preliminary injunctions are pending in the Courts of Appeals. The lower courts concluded otherwise because the new definition of sex discrimination is intertwined with and affects many other provisions of the new rule. Those courts therefore concluded, at least at this preliminary stage, that the allegedly unlawful provisions are not readily severable from the remaining provisions. The lower courts also pointed out the difficulty that schools would face in determining how to apply the rule for a temporary period with some provisions in effect and some enjoined.

In this emergency posture in this Court, the burden is on the Government as applicant to show, among other things, a likelihood of success on its severability argument and that the equities favor a stay. On this limited record and in its emergency applications, the Government has not provided this Court a sufficient basis to disturb the lower courts' interim conclusions that the three provisions found likely to be unlawful are intertwined with and affect other provisions of the rule. Nor has the Government adequately identified which particular provisions, if any, are sufficiently independent of the enjoined definitional provision and thus might be able to remain in effect. Moreover, related to the equities, the Sixth Circuit has already expedited its consideration of the case and scheduled oral argument for October. The Court expects that the Courts of Appeals will render their decisions with appropriate dispatch. In light of all of the circumstances, the Court denies the Government's applications for partial stays.

**\*2** *It is so ordered.*


Justice SOTOMAYOR, with whom Justice KAGAN, Justice GORSUCH, and Justice JACKSON join, dissenting in part from the denial of applications for stays.
Respondents challenged a Department of Education rule implementing Title IX of the Education Amendments of 1972. Respondents contend that the rule unlawfully redefines sex discrimination; that it violates students' and employees' rights to bodily privacy and safety; and that its definition of hostile environment harassment is inconsistent with the statute and violates the First Amendment. Every Member of the Court agrees respondents are entitled to interim relief as to three provisions of that Rule: 34 C.F.R. § 106.10 (2023) (defining sex discrimination), § 106.31(a)(2) (prohibiting schools from preventing individuals from accessing certain sex-separated spaces consistent with their gender identity), and § 106.2's definition of hostile environment harassment. Respondents' alleged injuries flow from those three provisions.

Today, however, a majority of this Court leaves in place preliminary injunctions that bar the Government from enforcing the entire rule—including provisions that bear no apparent relationship to respondents' alleged injuries. Those injunctions are overbroad. To be sure, this litigation is still unfolding, and respondents might eventually show injuries from the other portions of the rule. If so, those injuries might merit further relief. For now, on the briefing and record currently before us, I would stay the preliminary injunctions except as to the three provisions above, in keeping with the traditional principle of equitable remedies that "relief afforded [to] the plaintiffs" must not "be more burdensome than necessary to redress the complaining parties." *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); see *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 765, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) ("[An] injunction [should be] no broader than necessary to achieve its desired goals").

I

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 86 Stat. 373, 20 U.S.C. § 1681(a). Congress charged the Department of Education with "issuing rules, regulations, or orders of general applicability" to "effectuate" Title IX's antidiscrimination mandate. § 1682. Pursuant to that authority, in April 2024, the Department issued an omnibus rule amending Title IX's regulations, set to take effect nationwide on August 1, 2024. See 89 Fed. Reg. 33474 (2024) (Rule). The amended provisions of the Rule cover a range of matters, most of which do not reference gender identity discrimination and went unmentioned by respondents.[1]

[1] Those provisions include: a provision requiring access to lactation spaces and "reasonable modifications" for pregnant students, such as restroom breaks, 89 Fed. Reg. 33888, 33895–33896 (to be codified in 34 C.F.R. §§ 106.40(b)(3)(v), 106.57); a provision affirming the legal rights of parents and guardians to act on behalf of complainants and respondents, 89 Fed. Reg. 33885 (to be codified in 34 C.F.R. § 106.6(g)); three provisions addressing schools' obligations in responding to claims implicating Title IX, including measures to assist impacted parties, employee-notification requirements, Title IX coordinator duties, applicable grievance procedures, and protection of personally identifiable information, 89 Fed. Reg. 33888–33895 (to be codified in 34 C.F.R. §§ 106.44, 106.45, 106.46); a provision addressing schools' obligations to designate Title IX coordinators, and adopt and implement a nondiscrimination policy and grievance procedures, 89 Fed. Reg. 33885–33886 (to be codified in 34 C.F.R. § 106.8); a provision clarifying schools' obligations with respect to retaliation, 89 Fed. Reg. at 33896 (to be codified in 34 C.F.R. § 106.71); a provision clarifying that the Department of Education's Assistant Secretary of Civil Rights will not deem a recipient to have violated the Title IX regulations solely because the Assistant Secretary would have reached a different decision in a particular complaint alleging sex-based harassment, 89 Fed. Reg. at 33895 (to be codified in 34 C.F.R. § 106.47); and a provision addressing what pre-employment inquiries a school may make regarding an individual's marital status and sex, 89 Fed. Reg. 33896 (to be codified in 34 C.F.R. § 106.60).

**\*3** Respondents claim they are harmed by three provisions of the Rule. First, at 34 C.F.R. § 106.10, the Rule defines "[d]iscrimination on the basis of sex" to "includ[e] discrimination on the basis of sex stereotypes, sex characteristics, pregnancy or related conditions, sexual orientation, and gender identity." 89 Fed. Reg. 33886. Second, at § 106.31(a)(2), the Rule addresses Title IX's application in sex-separated spaces. 89 Fed. Reg. 33887. The Rule leaves untouched Title IX's explicit recognition that schools may differentiate between students on the basis of sex in some contexts, such as in assigning dormitories and creating athletic teams.[2] Outside those statutory exceptions, however, § 106.31(a)(2) states that Title IX generally permits "different treatment or separation on the basis of sex" only to the extent that such differential treatment or separation does not "discriminat[e]... by subjecting a person to more than de minimis harm." Section 106.31(a)(2) further provides that a policy or

practice that "prevents a person from participating in an education program or activity consistent with the person's *gender identity* subjects a person to more than de minimis harm on the basis of sex." (Emphasis added.) Sections 106.10 and 106.31(a)(2) are the only provisions in the entire Rule that reference "gender identity."

2   Specifically, those contexts include membership in fraternities or sororities, 20 U.S.C. § 1681(a)(6), separate living facilities, § 1686, and athletic teams, Education Amendments of 1974, 88 Stat. 612. The Department explained in the Rule that neither § 106.31(a)(2) nor anything else in the Rule addresses or alters existing requirements governing sex separation in athletics, which is the subject of a separate rulemaking. 89 Fed. Reg. 33816–33817.

Third, at 34 C.F.R. § 106.2, the Rule defines several terms, including "hostile environment harassment." 89 Fed. Reg. 33884. "Hostile environment harassment" is a prohibited form of sex discrimination that, as defined by the Rule, involves "[u]nwelcome sex-based conduct that, based on the totality of the circumstances, is subjectively and objectively offensive and is so severe or pervasive that it limits or denies a person's ability to participate in or benefit from the recipient's education program or activity (*i.e.*, creates a hostile environment)." *Ibid.* Respondents do not object to § 106.2's definitions of other terms within the Rule, such as "complaint," "disciplinary sanctions," "elementary school," and "student."

Two groups of States filed suits in two District Courts challenging the new Rule as unlawful.[3] They contend that the Rule unlawfully rewrites Title IX's prohibition on sex discrimination to include discrimination based on students' gender identity. Respondents further argue that § 106.2's definition of "hostile environment harassment" is unlawful under *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), because it waters down the standard for what constitutes actionable sex-based harassment: Title IX complainants can prevail under the Rule by showing the alleged harassment was severe or pervasive (as opposed to both) and do not need to prove that the offending conduct denied them access to educational benefits. Respondents separately assert that § 106.2's definition of "hostile environment harassment" violates the First Amendment by chilling or compelling speech, including on issues of gender identity.

3   One suit was brought by the States of Louisiana, Mississippi, Montana, and Idaho, joined by the Louisiana Department of Education and 18 Louisiana school boards. Another suit was brought by the states of Tennessee, Kentucky, Ohio, Indiana, Virginia, and West Virginia, joined by an association of Christian teachers and a 15-year-old girl from West Virginia. Several other States and parties have filed similar suits challenging the Rule and requesting preliminary injunctions within the plaintiff States. See *Kansas v. United States Dept. of Ed.*, —— F. Supp. 3d ——, 2024 WL 3273285 (D Kan., July 2, 2024); *Texas v. United States*, No. 24-CV-86, 2024 WL 3405342 (ND Tex., July 11, 2024); *Carroll Independent School District v. United States Dept. of Ed.*, —— F. Supp. 3d ——, 2024 WL 3381901 (ND Tex., July 11, 2024); *Arkansas* v. *United States Dept. of Ed.*, No. 4:24–CV–636, —— F. Supp. 3d ——, 2024 WL 3518588 (ED Mo., July 24, 2024), ECF Doc. 54; *Alabama v. Cardona*, No. 7:24-CV-533, 2024 WL 3607492 (ND Ala., July 30, 2024).

*4 Accordingly, when respondents asked the District Courts to preliminarily enjoin enforcement of the Rule, they focused on the two provisions concerning gender identity—§§ 106.10 and 106.31(a)(2)—and § 106.2's definition of "hostile environment harassment." Respondents alleged that those three provisions would cause them irreparable harm if the Rule went into effect. Specifically, they asserted that they would incur unrecoverable costs in complying with those provisions (and a loss of Title IX funding if they failed to do so), that they would lose the right to speak freely on issues such as gender identity, and that they would be unable to enforce existing state laws that conflict with the Rule's prohibition of gender identity discrimination. Although respondents' alleged irreparable harm apparently traces back to just three of the Rule's provisions, the District Courts preliminarily enjoined the Government from enforcing the entire Rule in all the respondent States.

After unsuccessful efforts to seek relief from these overbroad injunctions in the lower courts, the Government asks this Court to stay the injunctions in part. The Government does not contest the continued injunction as to § 106.31(a)(2) (regulating access to sex-separated spaces) or § 106.2's definition of hostile environment harassment as applied to gender identity discrimination. Instead, it asks this Court to stay the injunction as to § 106.2's definition of hostile environment harassment as applied to other forms of sex discrimination, § 106.2's other definitions, § 106.10, and the remainder of the Rule's unchallenged provisions.

II

I would grant most of the Government's stay requests and leave enjoined only its enforcement of the three challenged provisions.[4] A preliminary injunction is an "extraordinary" exercise of equitable authority, appropriate only "upon a clear showing" that a party is "entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). To obtain a preliminary injunction, a party must establish, among other things, that it would likely suffer irreparable harm without equitable relief. *Ibid.* Even when a party makes that showing, though, a court must tailor equitable relief to redress the party's alleged injuries without burdening the defendant more than necessary. See *Madsen*, 512 U.S., at 765, 114 S.Ct. 2516 ("[An] injunction [should be] no broader than necessary to achieve its desired goals"); *Yamasaki*, 442 U.S., at 702, 99 S.Ct. 2545 (explaining that "relief afforded [to] the plaintiffs" must not "be more burdensome than necessary to redress the complaining parties").

[4] For § 106.2, I would leave enjoined only its definition of "hostile environment harassment."

Here, respondents' alleged injuries flow from the challenged provisions. Even assuming respondents established that those provisions subject them to a threat of irreparable harm, enjoining enforcement of the entire Rule appears to go beyond what was necessary to redress those injuries.

Consider some of the unchallenged provisions. The Rule requires schools to provide "reasonable modifications" to pregnant students, including but not limited to "breaks during class to express breast milk, breastfeed, or attend to health needs associated with pregnancy or related conditions." 89 Fed. Reg. 33887. A separate provision prohibits schools from making a preemployment inquiry as to an applicant's marital status and limits the circumstances under which a school may make a preemployment inquiry as to an applicant's sex. *Id.*, at 33896. The Rule also mandates that schools prohibit staff and students from retaliating against students who file Title IX complaints, and provides the procedure a school must follow upon receiving a complaint of retaliation. *Ibid.* Those provisions (like many others in the Rule) do not reference gender identity discrimination or hostile environment harassment and bear no apparent relationship to respondents' alleged injuries. As litigation over the Rule proceeds, respondents might be able to show those other portions of the Rule will irreparably harm them in a manner justifying further equitable relief. At this juncture, however, enjoining the application of any other part of the Rule needlessly impairs the Government from enforcing Title IX and deprives potential claimants of protections against forms of sex discrimination not at issue in respondents' suit.

*5 Respondents maintain that the Government must remain enjoined from enforcing the entire Rule because the challenged provisions "permeate" it. Respondents fail to explain, however, why enjoining enforcement of the entire Rule at this stage is necessary to redress their alleged injuries. As an initial matter, many unchallenged provisions (such as those governing preemployment inquiries about an applicant's marital status or sex and prohibiting pregnancy discrimination) include no reference to gender identity discrimination or hostile environment harassment. Respondents offer nothing to justify preventing the Government from enforcing those parts of the Rule. As for the provisions that do incorporate the Department's allegedly

unlawful definitions of sex-based discrimination and harassment, respondents do not explain how those provisions would injure them while the Government is enjoined from enforcing the disputed definitions. Take the Rule's requirement that employees be trained on "[t]he scope of conduct that constitutes sex discrimination under Title IX and this part, including the definition of sex-based harassment." 89 Fed. Reg. 33886. Even respondents do not argue that the training requirement is itself unlawful. With the challenged provisions out of the picture, the "scope of conduct" under that training provision would exclude gender identity discrimination and hostile environment harassment, the sources of respondents' alleged injuries. If there were any doubt on this score, moreover, the Court could simply have excluded the provision from its stay order.

Respondents further assert that the Rule would be unworkable with the Government enjoined from applying its definition of sex discrimination. For 50 years, however, Title IX regulations have not defined sex discrimination, and respondents offer no evidence that schools cannot comply with their Title IX obligations without such a definition.

* * *

By blocking the Government from enforcing scores of regulations that respondents never challenged and that bear no apparent relationship to respondents' alleged injuries, the lower courts went beyond their authority to remedy the discrete harms alleged here. The injunctions this Court leaves in place will burden the Government more than necessary. The injunctions will also affect the public. Individuals in the respondent states will be deprived of guidance related to their rights under Title IX, of updates to the processes schools must follow in investigating their complaints of sex discrimination, of protections from retaliation should they file a complaint, and of much more. On the present record, more tailored relief focused on the three challenged provisions would have redressed respondents' alleged injuries without depriving the public of the Rule's other provisions. Because the majority of this Court nonetheless leaves the overly broad injunctions in place, I respectfully dissent in part.

**All Citations**

603 U.S. ----, --- S.Ct. ----, 2024 WL 3841071

End of Document © 2024 Thomson Reuters. No claim to original U.S. Government Works.